WILLIAMS v. HUBBARD ET AL.

The return of an execution on the return day is a good return for the purposes of a judgment creditor's bill under the statute.

Where the officer returned, to an execution against two defendants, that they had no goods or chattels, lands or tenements, without in terms negativing the fact that either of them had, the return was held sufficient.

On a judgment creditor's bill, the regularity of the judgment and execution cannot be inquired into.

Where the test day of an execution, and the day a levy was made, are stated in the bill, but not the return day of the execution, the court will take judicial notice of the terms of the court out of which the execution issued, for the purpose of ascertaining whether the levy was made in the life-time of the execution.

Where one of several judgment debtors is wholly irresponsible and destitute of property, he need not be made a party to a judgment creditor's bill.

What is a sufficient allegation that E. P. H. was the assignee in bankruptcy of W.

APPEAL from the Court of Chancery. A bill was filed by Williams against Hubbard, Barton and Mooney, for the purpose of reaching equitable assets belonging to Hubbard, the judgment debtor, and to set aside a conveyance of real estate, made by Hubbard to Mooney, to defraud creditors. The bill stated the obtaining of a judgment by Williams against Hubbard and one Cooper, who was not a party to the bill, in the Oakland Circuit Court, on the 30th March, 1841; the issuing of an *alias fi. fa.* on 21st December, 1844 (a *fi. fa.* having been previously issued), returnable the second Tuesday of June thereafter, and that the sheriff, on the tenth of June, returned he had made diligent search within his bailiwick for goods and chattels, lands and tenements of Hubbard and Cooper, and could find none whereon to levy the execution, and therefore returned it unsatisfied: that on the 18th February, 1846, a *pluries fi. fa.* was issued, and that on the 20th day of the same month, for want of goods and chattels, the sheriff levied on certain real estate as Hubbard's, which the bill charged had been conveyed by Hubbard to Mooney, and subsequently, at Hubbard's request, by Mooney to Barton, in fraud of Hubbard's creditors: that Cooper, the

co-judgment debtor, was wholly irresponsible and destitute of property, real or personal: that on 21st March, 1843, Williams was declared a bankrupt, by the district court of the United States for the district of Michigan, and that, by virtue thereof, all the property, effects, and rights of property of Williams became divested out of him and vested in Eurotas P. Hastings, the official or general assignee in bankruptcy, appointed and designated, under the act of congress, by the said district court; and that Hastings, on the 12th June, 1843, for a valuable consideration, assigned and transferred unto Williams the aforesaid judgment. The bill also contained all the usual allegations of a creditor's bill under the statute. Hubbard and Barton demurred, and, the court below having overruled the demurrer and entered a decree in favor of Williams, they appealed to this court.

*Richardson and Stelle,* for the appellee.

*Goodrich,* for the appellants.

*By the court,* MILES, J. The cause of demurrer, which I shall first notice, is that the *alias fi. fa.* was returned *on* the return day, which, it is insisted, is a day too soon, as a levy might be made on that day.

By the terms of the writ, the sheriff is required to return it upon the return day; and although he may keep it in his hands until the last moment of that day, for the purpose of making search for property upon which to levy, yet he is required to return it *upon* that day; and if we give the officer full credit for a faithful performance of his duty under the law, we may well presume the writ to have been returned on the last moment of that day.

I have been unable to find any case holding the doctrine that, for the purpose of a creditor's bill, the execution was not well returned upon the return day.

2. It is also objected, that the return upon the *alias* execution is insufficient, being in general terms that the defendants (Hubbard and Cooper) have no goods or chattels, lands or tenements, &c., without in terms negativing the fact that either of them had any separate property.

The return is as broad as the command in the writ, and when there is more than one defendant, the form of execution now in use has ever

been held sufficient to include not only the joint property of all, but the several property of each, unless some one of them has not been served with process, in which case an endorsement upon the back of the execution to that effect is requisite: the legal meaning of the return, is, that neither the defendants jointly or separately have any property of which the sheriff could levy the debt.   7 Paige 56.

3. It is also urged, that it does not appear upon the face of the bill that the first execution was regularly issued and returned, and that unless this is shown to have been done, the issuing of the second execution was unauthorized and void.

It seems to me, that a rule requiring an exhibition of the regularity of all the proceedings upon the judgment in the law court, would lead to needless prolixity in creditors' bills, and be productive of no good results.   All that is required in this respect to give the court jurisdiction, is, that the complainant should show that he has had execution upon his judgment in the hands of the proper officer, and that he has been unable to find any property liable to execution upon which he could levy.

The court of chancery is not authorized to decide upon the regularity of the judgment and execution in the court of law.   8 Paige 373. This is stated to be an *alias* execution—that pre-supposes a first execution, and the bill states that one was issued, and that is enough.

4. It is also objected, that it does not appear that the levy was made in the life-time of the *pluries* execution—that the return day is not stated.

The test of this writ is alleged to have been on the 18th day of February, 1846, and that the levy was made on the 20th day of the same month.   The court will take judicial notice of the terms of the circuit court, and as the writ was, by the statute then existing, to be made returnable at the next term after it was issued, the levy is thereby shown to have been while the *fi. fa.* was in life.

5. The next ground of demurrer is, that the judgment debtor, Cooper, is a necessary party.

This point was much pressed on the argument.   I have examined all the cases bearing upon it, and propose to consider it fully, but as the subject requires in its discussion a close obedience to authority, no more must be expected than a careful consideration of the cases referred to,

in the hope to get a correct view of the principles which govern this portion of what is termed by Judge Story, "that most intricate and important branch of equity pleadings, the subject of the necessary and proper parties to bills." Preface to Story's Eq. Pl., p. 7.

The general rule undoubtedly is, as stated by Lord Hardwick, in Madox *v.* Jackson, that where a debt is joint and several, the plaintiff must bring each of the debtors before the court, because they are entitled to the assistance of each other in taking the account, and are entitled to contribution where one pays more than his share of the debt. 3 Atk. 406. Angerstein *v.* Clark, was decided upon the same principle. 2 Dickins 738.

In the case of Cockburn *v.* Thompson, 16 Ves, 327, the strict rule is stated to be, that all persons materially interested in the subject of the suit ought to be made parties, that there may be a complete decree between all parties having material interests; but that this is a general rule, established for the convenient administration of justice, and must not be adhered to in all cases, and that there are several well known cases of exception.

Among the various cases admitting the general principle, but forming an exception upon circumstances, is that of Madox *v.* Jackson, before referred to, decided in 1746. There there were three obligors in a bond; the obligee brought the principal and the representatives of one of the sureties before the court, and stated that the third was dead and his estate insolvent. It was held, that under the circumstances of the case he was not a necessary party: that this was an exception out of the case requiring a contribution, as there were no personal assets, therefore the representative of the deceased obligor was an unnecessary party.

Angerstein *v.* Clark, was decided in 1790. The chancellor recognized the case of Madox *v.* Jackson, and held, that to a bill against an obligor in a joint and several bond, an insolvent co-obligor need not be made a party.

In Bland *v.* Winter, 1 Sim. & Stu. 247, the general rule was recognized, that to a bill filed by an obligee of a joint and several bond for the payment of his debt, all the obligors must be made parties. In that case no reason was shown for making it an exception.

It should be observed, that in deciding the case of Angerstein *v.*

Clark, Lord Thurlow had occasion to consider not only the case of Maddox *v.* Jackson, but also another case, Collins *v.* Griffith, 2 P. Wms. 314, decided by Lord King in 1725, upon reasoning which, says Judge Story, it seems difficult to answer.  Story's Eq. Pl. 159, note.  The ground upon which the decision in the latter case seems to have been placed, is, that the obligee, may in equity, as at law, sue the bond severally : that the creditor lends his money upon the terms of having security which he might thus sue if he thought fit ; and if it were otherwise, what was intended to strengthen the security would tend to weaken it, as he might not be able to find all the debtors, and if some were dead their heirs as well as executors are to be made parties, and the suit would be subject to continual abatements.  He held (as a natural result from this doctrine), that if any obligor had paid all or a part, he who is sued must bring a bill and have it allowed, and that it must lie with him to enforce contribution to the payment of the debt. The same was held in Stanley *v.* Stock, by the same chancellor, in 1730.  Moseley's R. 383.  This doctrine, however, has been overruled in the cases to which I have referred, and the general rule is established in England as I have before stated it.

In the case of Van Cleef *v.* Sickles, in New York, Chancellor Walworth ruled, that it is not necessary to make all the joint debtors against whom judgment was obtained parties defendants to a creditors' bill, provided it distinctly appears in the bill that those who are not joined in the suit are wholly insolvent and destitute of property.  5 Paige 505.

The chancellor sustains the general rule, as before stated, but makes this an exception upon the circumstances.

Upon the argument, much reliance was placed upon the cases referred to, showing the necessity for the assistance of the other party in taking the account.  It is true, the bill prays that an account may be taken of the amount due upon the judgment, but equally true that the bill contains an express, positive allegation, that the whole amount of the judgment is still due and unpaid, over and above all set-offs.  This is admitted by the demurrer, and being so admitted, there is no ground for making the other defendant in the judgment a party, either because he may have paid any part of the judgment, or for any assistance in taking the account.  3 Atk. 406.

It seems to me, then, as this bill contains an averment that Cooper is

insolvent and entirely destitute of property, the necessity of making him a party is dispensed with.

The last objection necessary to be noticed is, that there is no sufficient averment that Eurotas P. Hastings was appointed assignee in bankruptcy of the complainant—that is, assignee in this particular case.

The statute is, that the property and rights of property of the bankrupt shall, by mere operation of law, from the fact of his being declared a bankrupt by a decree of the court, from the time of such decree be divested out of him; and the same shall be vested, by force of the same decree, in such assignees as from time to time shall be appointed by the court for that purpose.

The bill follows the language of the statute in saying that the complainant was divested of the property by the decree, and that, by it, it was vested in Mr. Hastings, assignee appointed by the court. If the words "for that purpose," had been added, there could not have been any doubt of the sufficiency of the allegation. They are not added, but it appears to me it must be understood that the assignee was appointed for that, and for no other purpose; and that, under the more liberal rule applicable to pleadings in equity, than that applied to law pleadings, where greater strictness is required, this statement must be held to be sufficient. Story's Eq. Pl. sec. 240.