ISAIAH W. PURSEL AND OTHERS v. JAMES ARMSTRONG, ELIZABETH ARMSTRONG AND ANDREW J. ARMSTRONG.

*Transfer in Fraud of Judgment Creditors.*

Judgment creditors are entitled in aid of execution to a decree in equity avoiding a deed from their debtor to a third person by which his property is withdrawn to provide for himself and his family.

Appeal from Kalamazoo.    Submitted June 5.    Decided October 16.

BILL IN AID OF EXECUTION, to avoid a deed.    The facts are in the opinion.

*Breese & Stearns* for complainants and appellees.    Land conveyed fraudulently or for the purpose of delaying or hindering creditors, is subject to execution levy, and a judgment creditor may come into a court of equity without first showing the execution returned unsatisfied.    *Williams v. Hubbard,* Walk. Ch., 28; *Thayer v. Swift,* Har. Ch., 430; *Lasher v. Stafford,* 30 Mich., 369; *Doak v. Runyan,* 33 Mich., 75; *Pilling v. Otis,* 13 Wis., 495.    A conveyance of which the substantial consideration is the future support of the grantor and family, is fraudulent and void as to prior creditors.    *Church v. Chapin,* 35 Vt., 223; *Albee v. Webster,* 16 N. H., 362; *Coolidge v. Melvin,* 42 N. H., 510.    A conveyance made to defraud creditors will not be supported by an indebtedness to the grantee and a valuable consideration (*Pulliam v. Newberry,* 41 Ala., 168) or an adequate and fair consideration.    *Swinford v. Rogers,* 23 Cal., 234; 1 Story's Eq. Jur., §§ 369, 371; *Robinson v. Holt,* 39 N. H., 557; *Chapel v. Clapp,* 29 Ia., 191.    A voluntary conveyance is always fraudulent as to existing creditors.    *Enders v. Williams,* 1 Metc. (Ky.), 346; *Jackson v. Myers,* 18 Johns., 425; 1 Story's Eq. Jur., § 359; 1 Amer. Lead. Cases, 29–31.

*May, Buck & Powers* for defendant and appellant.    Only gross inadequacy of consideration is evidence of fraud.    *Surget v. Byers,* Hempst., 715; *Burch v. Smith,* 15 Tex., 219.    A conveyance is not fraudulent as to creditors unless the fraudulent purpose is shared by the grantee.    *Partelo v. Harris,* 26 Conn., 480; *Fifield v. Gaston,* 12 Ia., 218; *Steele v. Ward,* 25 Ia., 535; *Drummond v. Couse,* 39 Ia., 442; *Violett v. Violett,* 2 Dana, 323; *Brown v. Foree,* 7 B. Mon., 357; *Brown v. Smith,* Id., 361; *Harrison v. Phillips,* 12 Mass., 456; *Bridge v. Eggleston,* 14 Mass., 250; *Byrne v. Becker,* 42 Mo., 264; *Bancroft v. Blizzard,*

13 Ohio, 30; *Leach v. Francis*, 41 Vt., 670. The fact that a man in failing circumstances conveys to his son, is not *prima facie* evidence of fraud. *King v. Russell*, 40 Tex., 124. A grantee cannot be divested because part of the consideration paid by him ought in equity to go to the grantor's creditors. *Slater v. Dudley*, 18 Pick., 373.

GRAVES, J.   Complainants being judgment creditors of the defendant James Armstrong levied on a farm of two hundred and forty acres he had owned, but of which he and his wife, the defendant Elizabeth, had just given a deed to his son the defendant Andrew.

This bill was then filed in aid of the execution, the complainants alleging that the deed to Andrew was in fraud of creditors.   The defendants answered jointly and denied the fraud and set out a statement of the transaction and claimed that Andrew was a fair purchaser in good faith and for a valuable consideration.   Testimony was taken and the circuit judge on final hearing decreed in favor of complainants and the defendant Andrew appealed.

On the 28th of February, 1873, the defendant James, as the answer states, was eighty-five years old and very infirm and incapable of managing his affairs.   He was indebted to complainants and also to other parties besides his son Andrew in the sum, as the answer further states, of about two thousand dollars.   The farm in question was then owned by him but it was mortgaged for other debts for about $3,000. He was owner at the same time of personal property which the answer admits to have been worth $300.   All the property real and personal was at that time formally transferred to his son, the defendant Andrew, the deed for the farm expressing a consideration of $2,000 and purporting to convey the entire premises for that sum subject to the incumbrance by mortgage.   No writings except the deed were executed and no securities were given to the old gentleman or his wife.   Whatever were the undertakings of Andrew they were verbal.   The old gentleman, the judgment debtor, was left without a dollar.   The farm at this time as the proof shows was worth more than $14,000 and the answer admits it was valued in the trade at $12,000.

The answer professes to explain the transaction and show that it was definite and reasonable and distinguished by good faith : and both father and son in their statements as witnesses in their own behalf strenuously endeavor to clear it up and uphold it.   The exposition by the answer is wordy enough, but very vague, and among its defects will be noticed the want of explanation concerning the amount and real particulars of consideration claimed to have proceeded from Andrew.    Upon this subject there is a great deal of talk, but nothing satisfactory as to the extent of consideration or the ingredients of it, and the case suggests that this darkness and uncertainty are due to the real state of things and not by any means to inadvertence on the part of counsel.    The statements upon the stand are especially infirm. That of the old gentleman differs from the case made in the answer and is in conflict with Andrew's evidence in many important points, and Andrew's testimony is very much at fault.    It departs widely from the answer and so far as it seems to establish or elucidate any thing complete and tangible it points to an arrangement quite different from that foreshadowed there.    In some important respects it is contradictory and in others altogether ambiguous and uncertain.    No one can determine from it the real bargain it aims to establish.    To distinguish and explain all the infirmities alluded to would require the reproduction of a large share of the record, and this is not needful.

One or two matters may be mentioned.    The defendant Andrew contends that the expressed consideration is quite untrue and very much too small, and that in fact there was a large amount of consideration which consisted of debts his father owed him, and he at first testified that among these debts was the large item of $400 for his services in clearing twenty acres of land.    His counsel accepting this representation as correct, has placed the item in the catalogue in his brief of the matters claimed to make up the purchase price of the farm, and has put special stress upon it.  The record shows however that on cross-examination Andrew finally admitted that this $400 was fully paid him by his father long before the deed was given.    There is also some

confusion in regard to claims suggested on account of payments for store goods. In one place there appears to be an effort to cause the impression that on the occasion of working the farm on equal shares Andrew became a creditor of his father to a considerable amount for sums paid at stores and groceries for family supplies, and that the demands thus caused were accessory in some way to the consideration and entitled to weigh in favor of the validity of the transfer. It is noteworthy, however, that before the examination was finished it was drawn out that the store and grocery bills were required by the agreement for letting to be paid out of the undivided products and not by the .old gentleman: and there are strong intimations certainly that Andrew handled every dollar of proceeds of the products without accounting to any body.

In fine, the versions given by the immediate parties are so full of inconsistencies and so chaotic and uncertain that no one can derive therefrom any clear notion of the main elements of the transaction as the defense undertake to represent it. It would be difficult to overlook such con-. siderations.

When a transaction of this class is legitimate, when it is actual and straightforward, when it is free from all sinister doings and all deceptive appearances, there can be no difficulty in describing it clearly and precisely in pleading or in explaining it distinctly and lucidly on the stand. The perplexity begins when it is attempted to make a good case out of a bad one. But it is unnecessary to dwell upon the cause under this view of it.

It is admitted that $5,000 of the consideration was a promise to provide support for the old gentleman and his wife during their lives, and that $3,000 more was a further promise to expend certain sums in gifts in his behalf to his children and grand children. It is likewise admitted that the arrangement left him without a cent of property to meet complainant's debt, and the case will not justify belief that either party to it was ignorant of the existence of that debt. There can be no question concerning Andrew's connection

with the business. His vigilance in regard to his own interest, the age and incapacity of the old gentleman and other circumstances convey the impression that the whole matter was arranged and controlled by him. At all events his will and his intelligence concurred, and it would reflect upon his good sense to say he did not comprehend the force or contemplate the necessary tendency of the scheme. And speaking plainly, that scheme had for its chief object what it distinctly involved, namely, the impounding away from creditors a large share and all that remained of the old gentleman's property as a provision for himself and wife and his children and grand children, and it naturally presupposed that complainants would be hindered and delayed by it in collecting their demand and might be wholly defeated. Fonb., B. 1, ch. 4, § 12. Whatever gentlemen may suppose ought to be the rule, it is certain the law cannot be reconciled with such dealing. Indeed nothing can be clearer than complainant's right to claim an avoidance on account of the withdrawal of the property to make voluntary provision for the debtor and his family. The case is too clear to excuse particular discussion. It is sufficient to refer to a few cases. *Cornish v. Clark,* L. R., 14 Eq. Cases, 184: 3 Eng., 695; *Robinson v. Stewart,* 6 Seld., 189; *Planck v. Schermerhorn,* 3 Barb. Ch. Rep., 644; *Goodrich v. Downs,* 6 Hill, 438; *Barney v. Griffin,* 2 Comst., 365; *Collomb v. Caldwell,* 16 N. Y., 484; *Curtis v. Leavitt,* 15 N. Y., 9, 116, 132. *Harris v. Sumner,* 2 Pick., 129; *French v. French,* 39 E. L. & E., 85; *Walcott v. Almy,* 6 McLean, 23; *Doak v. Runyan,* 33 Mich., 75; *Towle v. Hoit,* 14 N. H., 61; *Lukins v. Aird,* 6 Wall, 78; *Kehr v. Smith,* 20 Id., 31; *Fitzer v. Fitzer,* 2 Atk., 511; *Taylor v. Jones,* Id., 600; *Twyne's Case,* 3 Co., 80 b.

The reciting part of the decree contains some few useless expressions which are perhaps hardly appropriate. Omitting these, the decree should be affirmed, with costs.

The other Justices concurred.