---

IsAAc E. Messmore v. John Huggard and Francis Huggard.

*Purchase of mortgaged lands by judgment creditor at execution sale only covers equity of redemption—Intention to contest mortgage should be made known to other bidders.*

Complainant having a judgment against A. caused execution to be levied on lands and a sale made at which he became the purchaser. The land was duly conveyed to him in pursuance of this sale after time for redemption had expired. He then filed his bill in equity against A. & B., alleging that previous to his levy A. had given to B. a

mortgage on the lands for a considerable sum, fraudulently and without consideration, and in order to defeat complainant in the collection of his judgment, and he prayed a decree setting it aside as a cloud on his title. From the evidence it appeared that complainant knew of the existence of the mortgage when he made his levy, but that when sale was made there was no notification of any intent to contest the mortgage, and the sale proceeded in all respects as it would have done if the mortgage were uncontested. *Held*, that under such circumstances the complainant must be deemed purchaser of the equity of redemption only.

If complainant proposed to contest the mortgage after becoming purchaser it was his duty to have notice given at the time of the sale, so that parties concerned would understand what was claimed and proposed, and could take their measures accordingly; and so that any other persons who might propose to become bidders should be put upon a par with complainant in respect to knowledge of the interests which were offered for sale. A sale at which others would understand they were bidding for the equity of redemption only, but at which complainant would be bidding for an unencumbered title, would be inadmissible, because opposed to the policy of the law which favors full and free competition.

Appeal from Kent. Submitted June 30. Decided Oct. 5.

BILL to clear title. Defendants appeal. Reversed.

*E. T. Miller, E. S. Eggleston* and *Wm. Wisner Taylor* for complainant.

*Hughes, O'Brien & Smiley* for defendants, cited *Pogodzinski v. Kruger* 44 Mich. 79; *Fisher v. Hall* id. 493; *McCullough v. Day* 45 id. 554.

COOLEY, J. This is a bill in equity to remove a cloud upon title. The following is a summary of the facts as they are set forth in the bill:

In March, 1875, the defendant John Huggard was the owner of certain parcels of land in the township of Nelson, Kent county, comprising in all two hundred and forty acres, and had the record title thereto. While so the owner, he became indebted to complainant and also to S. D. Clay for professional services. On May 13, 1875, John Huggard mortgaged all the lands to his co-defendant Francis Huggard for the nominal consideration of three thousand dollars,

but the bill avers that there was no real consideration whatever therefor, and that it was executed for the purpose and with the intent of defrauding complainant and Clay in the collection of their demands. Complainant took an assignment from Clay, and on September 17, 1875, commenced suit against John Huggard and attached the lands. September 22, 1877, complainant obtained judgment in this suit for the sum of $567.16 and costs taxed at $88.77. Subsequent to the attachment releases were given by John to Francis of certain portions of the mortgaged lands, and the bill avers that these were executed with the like intent to defraud. On January 19, 1878, complainant caused all the lands to be sold on an execution issued upon his said judgment, and they were struck off to him as purchaser for the sum of $716.10, and on May 5, 1879, after the time for redemption had expired, they were conveyed to him by the sheriff in completion of the sale. The bill further shows that the mortgage from John to Francis was recorded immediately on its execution, but avers that its existence was only discovered by complainant after he had become purchaser of the lands at the execution sale. The prayer of the bill is that the mortgage and releases be decreed to be altogether fraudulent and void as against complainant, and that the said Francis be required to release.

The answer of the defendants denies all fraud, and insists that the mortgage from John to Francis was given in good faith, and for full consideration of money loaned. Issue was taken on the answer, and the case heard on pleadings and proofs. The circuit court made a decree in favor of complainant, in conformity with the prayer of the bill. It appears from the record that the complainant established the indebtedness, the judgment, the sale and conveyance by the sheriff, but the proofs negative the allegation of the bill that the mortgage came to the knowledge of complainant after the sale was made. The complainant himself testified that he knew of the mortgage while his suit at law was pending, and narrated a conversation he had concerning it with one of the defendants before the judgment was obtained. Upon the

question of good faith in giving and receiving the mortgage
we find in the record a large amount of evidence, very contra-
dictory in its nature.   The evidence of the defendants is very
circumstantial and positive that the consideration was full and
*bona fide,* but the complainant insists that it is overcome by
various circumstances of improbability and suspicion which
he points out as surrounding the transaction as it is described
by defendants.

The questions arising upon the record are—*First,* whether
the alleged fraud is established; and if so, *second,* whether
in respect of such fraud the law will grant to the complain-
ant the relief he seeks.   The second may properly be con-
sidered first, in view of the serious conflict of evidence in
respect to the fraud.

It is not denied on the part of the defendants that when
complainant discovered the existence of the mortgage, some
proper remedy was available to him for the purpose of test-
ing its *bona fides,* and having it declared inoperative as
against his judgment if he could establish the fraud.   The
steps usually taken in such cases are, first to levy the execu-
tion, and then file a bill in aid.   *Williams v. Hubbard* 1
Mich. 446; *Pashby v. Mandigo* 42 Mich. 172; *Pursel v.
Armstrong* 37 Mich. 326;   *Cole v. Tyler* 65 N. Y. 73;
*Hecht v. Koegel* 25 N. J. Eq. 135; *Lewis v. Lanphere* 79
Ill. 187; *Wallace v. Treakle* 27 Grat. 479; *Lindley v. Cross*
31 Ind. 106.   A decree for complainant on such a bill would
have relieved the title of the cloud which the recorded mort-
gage cast upon it, and the sheriff would then have been able
to offer an unencumbered title to purchasers.   Defendants
insist that this was the only course open to complainant, and
that he was not at liberty to have the land sold in its appar-
ently encumbered condition, and file a bill to set aside the
encumbrance afterwards.

The point has never before been distinctly presented in
this State, though since the decision in *Cleland v. Taylor* 3
Mich. 202, it has perhaps been assumed that the right to
question the *bona fides* of any conveyance by the judgment
debtor was. as much available to the creditor after he

had caused the land to be sold on execution and become the purchaser, as it was before. In that case the debtor had made an absolute conveyance, and the creditor, without proceeding to have the conveyance set aside, had become purchaser at the execution sale, and then brought ejectment. The defendant in ejectment questioned the right to inquire into the fraud in a court of law for the purpose of avoiding the deed; but the court, citing and relying upon *Jackson v. Myers* 18 Johns. 425; *Jackson v. Parker* 9 Cow. 73; *Jackson v. Timmerman* 7 Wend. 436, and 12 Wend. 299, and *Stephens v. Sinclair* 1 Hill 143, decided that it was as competent to set aside the fraudulent deed by suit at law as by bill in equity, and that ejectment by the purchaser at the execution sale was a suitable proceeding for the purpose. There are numerous decisions in other states to the same effect, and we do not question their authority.

But the case of *Cleland v. Taylor*, and the others referred to, have little analogy to this. In those cases the judgment debtor had conveyed away his whole interest, and any offer to sell on an execution against him necessarily attacked his conveyance. The judgment debtor would understand this, and his grantee would understand it and take his measures accordingly. So would all persons who should be inclined to become bidders at the sale understand it, and all would stand on an equality with the judgment creditor in making bids. No doubt it would be proper for the sheriff expressly to give notice at the sale that the validity of the debtor's conveyance was disputed, but as the offer to sell would be idle and meaningless if the conveyance was not contested, any such notice would obviously be unimportant.

In this case the situation was altogether different. The judgment debtor had only mortgaged his lands, and an interest remained in him which was subject to execution sale without questioning the mortgage. There is no doubt the judgment creditor might proceed to have this interest sold, and if he might also sell the complete title with the right to have the mortgage annulled afterwards, we must see whether he did the one or the other in this instance. On this point

the bill is silent, but the silence itself seems to us altogether conclusive against the complainant's case. It does not appear by the bill that the sheriff in any of his action questioned the validity of the mortgage; it does not appear that he offered to sell anything beyond the judgment debtor's apparent interest in the land; it does not appear that at the time of the sale anything was said or done that would have apprised Francis Huggard, the mortgagee, that the right to contest the mortgage was involved in the sale, or that would have given one coming there in the character of bidder to understand that something besides the equity of redemption was being sold. A stranger to the judgment purchasing under such circumstances would have purchased the equity of redemption only, for he would have bid for nothing else, and would have offered and paid only what he considered the equity of redemption worth to him.

It cannot plausibly be claimed that the law will suffer the judgment creditor to occupy any more favorable position as bidder at his sale than do all other persons. Judicial sales are required to be public for the purpose of inviting full and free competition, with the primary object of producing for the benefit of parties concerned as large a price as public biddings can secure for them. A secondary object is to give all who may desire the property an equal opportunity to compete for it. But full and free competition implies that all parties have equal knowledge of the state of the title; and the policy of the law is defeated if some one party may bid with such advantages as render competition impossible. *Ledyard v. Phillips* 32 Mich. 13.

But nothing can be plainer than that, if the judgment creditor could bid with the secret assurance that he was to have an unencumbered title, when others must suppose they were buying subject to the mortgage, this assurance gave him an advantage in bidding to the full amount of the mortgage, and practically put competition entirely out of the question. Not only would this be unfair to other bidders, and for that reason inadmissible, but it would be particularly unfair to the mortgagee. When the sale appears

to be of the equity of redemption only, the mortgagee has no occasion to trouble his mind about it; but if he were distinctly notified that it was made in hostility to his mortgage, he might, even if conscious of his good faith, prefer to redeem rather than encounter the risks of litigation. This would be his legal right and it cannot lawfully be taken from him through a secret understanding between the officer and the creditor of which he has neither actual nor implied notice. It is true that if the defendant Francis Huggard has knowingly accepted a fraudulent mortgage and becomes a loser thereby, he is entitled to no sympathy; but even voluntary fraud does not put one's interests out of the protection of the law, or entitle the party defrauded to confiscate them. A fraudulent conveyance is good as between the parties; *Cleland v. Taylor* 3 Mich. 203; *Millar v. Babcock* 29 Mich. 526; *McMaster v. Campbell* 41 Mich. 513; and even creditors are not permitted to assail it except by judgment and execution. *Fox v. Willis* 1 Mich. 321. And there may be equities between the parties which will support a mortgage, void as to creditors, when the creditors do not attack it by proper proceedings.

While therefore the complainant had an undoubted right to have the *bona fides* of the mortgage tested before sale, there can be no equity in permitting him to purchase the land apparently subject to the mortgage, and then to have its lien annulled afterwards. He has a right to reach his debtor's property, and have it sold for what it will bring at a fair and open sale; but he has no claim to speculate out of his debtor's fraud, and by using the mortgage to keep others from competing, obtain the property for so much less than its value. A purchase under such circumstances must be held to be, what it appeared to be at the sale, a purchase subject to the mortgage.

These views render the question of fraud in taking the mortgage unimportant. The decree so far as it directed a release of the mortgage is erroneous and must be reversed with costs of this court. As the releases by John to Francis Huggard were subsequent to the levy of the attachment on

the lands, they could not have affected complainant's right to redeem from the mortgage, and a declaration of their invalidity seems therefore unimportant. Complainant can, however, if he deems it material, embody in the decree a provision that the releases are inoperative as against his right to redeem.

The other Justices concurred.