ORENDORF and others *v.* BUDLONG and others.

*(Circuit Court, E. D. Michigan. May 8, 1882.)*

1. EQUITY—SETTING ASIDE DEEDS—CONCURRENT JURISDICTION.
     A court of equity has concurrent jurisdiction with a court of law to set aside deeds of real estate made to hinder, delay, and defraud creditors.
2. SAME—EXECUTION SALE—RIGHTS OF PURCHASER.
     This jurisdiction may be invoked by a judgment creditor either before or after sale upon execution. A purchaser upon execution has the same right in this respect as a judgment creditor.
3. JUDGMENT DEBTOR—ASSETS.
     The interest of a judgment debtor in lands fraudulently conveyed by him is a legal and not an equitable asset.
4. PRACTICE—DEMURRER OVERRULED—OPENING PROOFS.
     Where a defendant answers and demurs, but takes no testimony in support of his answer, and elects to go to a hearing upon his demurrer, leave will not be granted to open proofs upon overruling the demurrer.

In Equity. On motion for rehearing.

This was a bill by a judgment creditor, who was also purchaser upon the execution sale, to set aside a fraudulent conveyance made by the judgment debtor. The proofs showed that judgment was obtained in this court against the defendant Philo H. Budlong, June 12, 1877, execution issued and levied July 3, 1877, upon lands theretofore owned by the defendant, and a certificate of the levy filed in the county register's office; that the lands were sold upon such execution November 30, 1877, and were bid in by the complainants. A certificate of sale under the statute was recorded December 1st. This judgment was rendered upon a bond given by the defendant

Budlong to the plaintiff's intestate. On October 8, 1875, prior to the rendition of this judgment, but after a breach in the condition of the bond, the defendant Philo H. Budlong deeded the property in question to his son George, who gave a mortgage back upon the same day for $3,500,—the entire consideration,—payable ten years from date. This mortgage was assigned in January, 1877, to one Ranney, of Chicago, and again assigned by Ranney to defendant Markham in July following. On November 26th, four days before the sale upon execution, George Budlong conveyed to Markham by a deed which was not delivered or recorded until December 26th, but remained in escrow after its execution awaiting payment of the consideration. The bill prayed that these several conveyances be set aside as fraudulent, and that the property be adjudged to belong to complainants. The answer of defendant Markham (who is now in possession of the property) denied the several allegations of fraud, and also set up by way of demurrer the insufficiency of the bill. Defendant took no testimony, but relied solely upon his demurrer. A decree was ordered for complainants.

J. H. Campbell, for complainants.

George Woodruff, for defendant.

Brown, D. J. There can be no doubt of the general jurisdiction of a court of equity to set aside fraudulent transfers of property at the instance of a judgment creditor. Such bills are constantly sustained, notwithstanding there may also be a remedy by ejectment, upon the ground that no remedy is full, adequate, and complete which leaves the fraudulent deed outstanding as an apparent cloud upon the title. Never since the case of Bean v. Smith, 2 Mas. 252, decided by Mr. Justice Story in 1821, has the power of the federal courts to entertain bills of this description been questioned. Bump, Fraud. Conv. 508; Pratt v. Curtis, 6 N. B. R. 139; Buck v. Sherman, 2 Doug. (Mich.) 176.

It was insisted, however, that this bill would not lie, because, under Comp. Laws, § 4628, it should have been filed within a year after the sale. The material parts of the section read as follows:

"All the real estate of any debtor, including legal and equitable interests in lands acquired by parties to contracts for the sale and purchase of lands, whether in possession, reversion, or remainder, including lands fraudulently conveyed with intent to defeat, delay, or defraud his creditors, and the equities and rights of redemption hereinafter mentioned, shall be subject to the payment of his debts, liabilities, and obligations, and may be levied upon and sold upon execution as hereinafter provided. * * * In case of a levy upon the equitable interest of a judgment debtor, the judgment creditor may, before sale, institute proceedings in aid of said execution to ascertain and determine

the rights and equities of said judgment debtor in the premises so levied upon; and that in case of a sale of said premises, after having ascertained and determined the interest of said judgment debtor in the premises so levied upon and sold, he shall, within one year, institute proceedings to ascertain and determine the same, and to settle the rights of parties in interest therein."

There are two sufficient answers to the complainants' proposition that these proceedings should have been taken within the year:

1. The jurisdiction of this court as a court of equity is uniform throughout the United States, and is unaffected by state laws. The Revised Statutes, § 913, declare the forms and modes of proceeding in suits of equity shall be according to the principles, rules, and usages which belong to courts of equity, as contradistinguished from courts of common law. Under this provision, which is taken from the act of 1792, it has always been held that the jurisdiction and practice of the circuit courts in equity was uniform throughout the United States, and not subject to restriction or limitation by local statutes. *Robinson* v. *Campbell*, 3 Wheat. 212; *U. S.* v. *Howland*, 4 Wheat. 108; *Boyle* v. *Zacharie*, 6 Pet. 648, 658; *Nooman* v. *Lee*, 2 Black, 499. It is a natural corollary of this proposition that we are not bound by the decisions of the state courts upon questions of equity jurisprudence. *Neves* v. *Scott*, 13 How. 268.

2. The limitation of the section in question applies only to "equitable interests," while the interest of a creditor in the land of his debtor, fraudulently conveyed, is a legal and not an equitable asset. *Pulliam* v. *Taylor*, 50 Miss. 555.

That this is the proper construction to be placed upon this statute is also evident by referring to the section of the Revised Statutes of 1846, from which it was taken. This chapter (chapter 79, § 1) provides "that all the real estate of a debtor, whether in possession, reversion, or remainder, including lands fraudulently conveyed with intent to defeat, delay, or defraud creditors, * * * shall be subject to the payment of his debts, and may be sold on execution." This chapter makes no reference to equitable interests, except the equity of redemption of a mortgagor; and in *Trask* v. *Green*, 9 Mich. 358, and *Maynard* v. *Hoskins*, Id. 485, it was held that it did not reach the case of lands which a judgment debtor had purchased and caused to be conveyed by the vendor directly to a third person to defraud his creditors, and that such lands could only be reached by a creditor's bill, filed after the return of an execution unsatisfied.

To obviate in some measure the difficulty of reaching equitable interests the statute was amended in 1867 by including legal and equitable interests in lands acquired by the parties to contracts for the sale and purchase of lands. It is obvious that the limitation of the one year within which proceedings may be taken after the sale applies only to those equitable interests, and perhaps those of a mortgagor, and not to the case of lands fraudulently conveyed. This was also the opinion of the supreme court of this state in *Cranson* v. *Smith*, 10 N. W. Rep. 194.

But the main defence to this case is that this bill should have been filed in aid of the execution and before the sale; the theory of the defendant being that if the judgment creditor waits until the land is sold, and he has obtained his deed, there is a complete and adequate remedy at law in an action of ejectment, and that he can no longer invoke the aid of a court in equity. In support of this proposition defendant relies upon the case of *Cranson* v. *Smith,* above cited, recently decided by the supreme court of this state. This case is directly in point. Complainants have attempted to distinguish it from the case under consideration, in the fact that Markham's title was not taken and did not appear of record until after the sale on execution. But the deed from Budlong to his son was the one in controversy. This was taken long before the bill was filed. If this deed was valid, and George Budlong was a *bona fide* purchaser, then Markham's deed conveyed a perfect title to him, even though he had notice of the levy. On the other hand, if George Budlong was not a *bona fide* purchaser, Markham, having notice of the levy, could not take a good title from him. Complainants' case, then, must stand or fall with the view taken by this court of the correctness of the ruling in the case of *Cranson* v. *Smith.*

This case undoubtedly conflicts with the previous intimations of the supreme court upon the same question, although the point had never been directly decided. Thus, in *Cleland* v. *Taylor,* 3 Mich. 201, which was an action of ejectment by a judgment creditor, who was also a purchaser at the sheriff's sale, to test the validity of a deed made by the judgment debtor, it was assumed, both by the court and counsel, that the right of the plaintiff to have the deed set aside in a court of chancery was unquestioned. So, in *Messmore* v. *Haggard,* 9 N. W. Rep. 853, which was a bill by a judgment creditor, who was also purchaser upon execution, to set aside a fraudulent mortgage made by the judgment debtor, it was held that the bill should have been filed before the sale, for the reason that if the

judgment creditor could buy with a secret assurance that he was to have an unencumbered title, when others must suppose they were buying subject to the mortgage, this assurance gave him an advantage in bidding to the full amount of the mortgage, and practically put competition entirely out of the question. It was thought to be unfair to the other bidders and to the mortgagee to give him this advantage. "There can be no equity in permitting him to purchase the lands apparently subject to the mortgage, and then to have its lien annulled afterwards." But in delivering the opinion Mr. Justice Cooley draws a clear distinction between that case and one where the judgment debtor has made a fraudulent conveyance of all his interest in the land:

"In those cases," he says, "the judgment debtor had conveyed away his whole interest, and any offer to sell on an execution against him necessarily attacked his conveyance. The judgment debtor would understand this, and his grantee would understand it, and take his measures accordingly. So would all persons, who should be inclined to be bidders at the sale, understand it, and all would stand on an equality with the judgment creditor in making bids. No doubt it would be proper for the sheriff expressly to give notice at the sale that the validity of the debtor's conveyance was disputed, but as the offer to sell would be idle and meaningless if the conveyance was not contested, any such notice would be obviously unimportant."

But in *Cranson* v. *Smith* the reservation thus made by Mr. Justice Cooley, (which seems to us unanswerable,) of cases like the present, where all bidders stand upon an equality, is expressly overruled. The reasons for his conclusion are stated as follows by Mr. Justice Marston:

"At the time the levy and sale was made under the execution, complainant, the judgment creditor, had full and ample knowledge of the conveyance from John F. Smith to his wife, the deed having been duly recorded. The complainant did not then, although he had an undoubted right to, file his bill in aid of his execution, and, if the conveyance was fraudulent, have it set aside, thus restoring and revesting the legal title in the judgment debtor, and thus enable intending purchasers to compete with him at the sale. He preferred to leave the matter not only in doubt as to the fraudulent character of the conveyance, but thereby to prevent any person from bidding against him, as purchasers under the levy made and interest sold could not have moved to have the conveyance declared void. The complainant could not thus acquire the title, and then come into a court of equity and ask to have the deed set aside."

But why cannot a purchaser under an execution sale move to have the conveyance declared void? We know of no reason. Clearly the authorities are in his favor. Indeed, the judgment creditor himself,

if he purchases at an execution sale, must take proceedings as purchaser and not as judgment creditor, to attack the conveyance. His rights as creditor are merged in those of purchaser. Bump, Fraud. Conv. 488; *Chandler* v. *Von Roeder,* 24 How. 224; *Cole* v. *White,* 24 Wend. 116; *Murphy* v. *Orr,* 32 Ill. 489; *Barr* v. *Hatch,* 3 Ohio, 527; *King* v. *Bailey,* 6 Mo. 575.

In *Sands* v. *Hildreth,* 14 Johns. 497, the court observes:

"It has been contended that the respondent is not invested with the rights of Whitney and others, under whose judgment he became a purchaser at a public sale made by the sheriff of Kings county under executions on those judgments. The statute, it is urged, protects creditors only from fraudulent ·deeds, and not a person standing in the situation of respondent. This proposition is, in my judgment, without any foundation. All the respondent's right to the land in controversy is derived from and under the judgments under which he purchased. The judgments are his title; and he is placed, by the judicial sale which took place, precisely in the place of the creditors. If the title acquired under the sheriff's sale fails, for want of title in the person against whom the execution issues, the purchaser is entitled to a restitution of the money paid. How can it, then, be pretended that the respondent is not clothed with all the rights of the judgment creditors, if they are liable to refund all that has been advanced by the respondent on the failure of the title he bought? The idea itself is novel, and unsupported by reason or authority."

And, even if the judgment creditor buys the land at less than its value, who is entitled to complain? Not the fraudulent transferee, for, as against the creditors of the grantor, his deed is as if it never had been written. Not the fraudulent grantor, because he has conveyed away his title by deed which is perfectly good as to himself, and every one except his creditors. We know of no reason why the rule which demands that a complainant shall come into a court of equity with clean hands does not apply equally to a defence set up in that court which is not available in an action at law. Now, without deciding whether a fraudulent debtor or his fraudulent grantee is entitled to any surplus that may be realized at the sale over and above the judgment debt, it seems to us that neither of them ought to be heard in a court of equity to complain that the judgment creditor did not file his bill before the sale, and have their deed set aside for fraud. "*Nemo allegans suam turpitudinem audiendus est.*" "He that hath committed iniquity shall not have equity."

Conceding the rule established in *Messmore* v. *Haggard* to be correct, it seems to us that the case of *Cranson* v. *Smith,* so far from being in affirmance of it, is a clear departure from it. We know of no authority which supports the principle announced in that case. None

are cited in the opinion, and, so far as our researches have extended, none can be found in the books. The leading case upon the subject is that of *Hildreth* v. *Sands,* 2 Johns. Ch. 35. This was a bill by a purchaser upon execution to set aside as fraudulent a deed of lands made prior to the judgment. In speaking of the defence, which was held good in *Cranson* v. *Smith,* Chancellor Kent observes:

"If it [the statute of Elizabeth] protects the creditor, it must protect his sale, and the purchaser under his judgment. The creditor, on any other construction, would be deprived of the fruit of his judgment, and the execution would be nugatory. There can be no doubt but that the plaintiff, as a purchaser under Whitney's judgment, is entitled to all the relief that the creditor himself would have been entitled to, for he stands in his place and is armed with his rights; and though he be a purchaser at a very low price, yet it was a fair purchase in the regular course of law, and it was owing to the unwarrantable acts of the debtor himself, in throwing a cloud over the title, that his property was thus sacrificed. It does not become the parties to a fraudulent deed to complain of the plaintiff's cheap purchase. However it may be regretted that the property has yielded but a very small compensation to the creditors, this fact cannot interfere with the question of right. The auction price was an accidental thing, growing out of the peculiar circumstances of the case, and affects only the parties concerned; but whether such a fraudulent conveyance shall stand or fall is deeply interesting to the whole community."

On appeal to the court of errors this decree of the learned chancellor was affirmed. 14 Johns. 493.

In the following cases, also, it was directly decided that a bill of this description might be filed as well after as before the sale under a judgment: *Gallman* v. *Perrie,* 47 Miss. 131, 140; *Mays* v. *Rose,* 1 Freeman, Ch. 703; *Frakes* v. *Brown,* 2 Blackf. 295; *Kellogg* v. *Wood,* 4 Paige, 578; *Carpenter* v. *Simmons,* 1 Rob. 360; *Porter* v. *Parmley,* 14 Abb. (N. S.) 16; *Best* v. *Staple,* 61 N. Y. 71; *Barr* v. *Hatch,* 3 Ohio, 527. In the following cases bills of this description have been sustained, though the point was not discussed: *Pope* v. *Pope,* 40 Miss. 516; *Pepper* v. *Carter,* 11 Mo. 540; *Dargan* v. *Waring,* 11 Ala. 988; *White* v. *Williams,* 1 Paige, 508; *Fisher* v. *Lewis,* 69 Mo. 629.

It seems to us there can be no doubt of the power of this court to entertain a bill of this description.

In so far as the merits are concerned, the testimony makes a clear case for the complainant. At the time of the deed to George Budlong, Philo was in default upon his bond, and a right of action had accrued. It was almost inevitable that a suit would be brought, and a judgment obtained against him. In this situation of things he conveys to his son George, who was without means and dependent upon

his father for support, and takes back a mortgage for the entire purchase money. This mortgage he assigns to Ranney, who was his brother-in-law, and a man without property, feeble in health, and partially, at least, dependent on his relatives for support. Ranney appears to have discharged this mortgage at the time of the sale to Markham, at Budlong's request, and nothing seems to have been paid him. There was no change in the possession or control of the property. Hill, who was working the mill under an arrangement with Philo, when the sale to George was made, testifies that George made no claim to the ownership or control. Philo went on as before, collected the earnings of the mill, settled with Hill for the profits up to June, 1876, when Hill went out. Philo then took the books containing the accounts up to that time. During that period, George worked a part of the time by the day in the mill. After the deed to George was made and recorded, Hill, having had his attention called to it, asked Philo about it, and whether he wanted him to run the mill any longer. Philo replied that he did. Hill then said, "I understand that you have sold the mill to George, and I suppose you want George to run it." Philo says, "I want you to run it; I own the mill as I have always owned it." Another witness testifies that in the fall of 1877, two years after the deed to George, Philo hired him to work in the mill and paid him for it, and also paid him for work done during 1876 and 1877.

We do not think that Markham can be considered a *bona fide* purchaser, or entitled to complain of this decree. He was a near neighbor; lived next door to the Budlongs and near the mill for many years, and during all of these transactions. He knew that George was in indigent circumstances, and that Philo was embarrassed and becoming insolvent. He knew of the complainant's judgment, and had actual personal knowledge of the levy and sale of the mill property. The notice of sale was posted on his land and near his door. The witness Diehl saw the notice there October 18, 1877, went in, saw Markham, and called his attention to it, telling him that the mill was advertised. Another witness saw the notice of sale there along in November. Indeed, Markham admits in his answer that he knew of the levy and certificate on one description, and he could not have failed to know of the levy upon the description involved in this case, as they were together. After the sale and on the same day, he met the witness Joslin, who had been present at the sale, and asked him to whom the mill property was sold and how much it brought. This was November 30, 1877. After this, and on December 26th, he took

his deed, while the marshal's certificate of sale was on record. This of itself was notice to him. *Atwood* v. *Bearrs*, 45 Mich. 469. Nor do we think that the decree ought to be opened to let in Markham's defence. The case was put at issue by filing a replication August 28, 1880. The demurrer was never set down for hearing. On October 1st counsel on both sides signed a stipulation to proceed to take testimony. A commissioner was then agreed upon. Complainants' proofs were closed in November, and the time for taking of defendant's testimony was extended from time to time until the seventh of April, when an order for the closing of proofs was entered. Late in April defendant made an effort to take the testimony of one witness, but abandoned it, and consented to go to a hearing upon his demurrer, relying upon that as a defence. Rule 69 requires that "testimony in equity cases shall be taken within three months after the case is at issue," and we are clearly of the opinion that defendant has not made a case for the opening of proofs now. No request for further time was made, no request for postponement, and counsel deliberately consented to submit the case upon the demurrer. But an equally conclusive answer is found in the fact that the affidavits do not disclose any defence which would be available to Markham. They tend to show that he made a bargain for the land in 1877 at $700, but the answer alleges that there was no money paid until December 26, (the day the deed was delivered,) when the marshal's certificate of levy was on file, and Markham had actual notice that the property was sold upon execution.

The motion for the rehearing must therefore be denied.