BENJAMIN WOLF AND DAVID WOLF v. WILLIAM
O'CONNER.

[See 83 Mich. 301.]

*Assignment for benefit of creditors—Preferences—Execution pur-
chaser—Bill to quiet title.*

1. An assignment for the benefit of creditors, executed prior to
the passage of the statute regulating the making of such
assignments, which prefers creditors without naming them
either in the body of the assignment or in a schedule annexed
at the time of its execution, is void upon its face as to non-
consenting creditors.

2. It has never been decided in this State, in cases arising previous
to the passage of Act No. 95, Laws of 1867, regulating the
practice in cases where a levy is made upon the equitable
interest of a judgment debtor, that an execution purchaser
cannot attack a conveyance made in fraud of creditors, either
in an action of ejectment or by bill in equity to remove a
cloud upon the title.[1]

Rehearing, upon application of complainants, of case
reported in 83 Mich. 301. Submitted January 8, 1891.
Decree affirmed October 30, 1891. The facts are stated
in the opinions.

*G. A. Wolf* (*E. F. Uhl*, of counsel), for complainants.

*Russell C. Ostrander*, for defendant.

CHAMPLIN, C. J. We granted a rehearing in this case

[1] Act No. 95, Laws of 1867 (How. Stat. § 6108), provides that, in
case of a levy upon the equitable interest of a judgment debtor,
the judgment creditor may, before sale, institute proceedings in
aid of said execution, to ascertain and determine the rights and
equities of said judgment debtor in the premises so levied upon;
and that, in case of a sale of said premises without having ascer-
tained and determined such interest, he shall, within one year,
institute proceedings to ascertain and determine the same, and to
settle the rights of the parties in interest therein.

upon the application of the complainants, and the case has again been submitted to us for our consideration. The opinion handed down by us is reported in 83 Mich. 301.

One of the points made upon the original hearing was that the instrument was void upon its face. In the opinion handed down we said that the complainants had failed to point out the reason of their assertion that the deed of assignment was void upon its face; but in their motion for a rehearing they have stated the grounds upon which this claim is made, and to which our attention is now challenged. It is claimed that the assignment is void upon its face because it declares preferences in favor of certain creditors, and such preferred creditors are not named either in the body of the instrument or in a schedule attached thereto.

For a statement of the claim made by the complainants, and of the chain of title of the respective parties, reference is made to our former opinion.

It appears from the testimony that at the time of the assignment Robinson was considerably indebted to different persons, and was unable to pay them, and executed an assignment purporting to be for the benefit of all his creditors, with certain preferences, hereinafter more particularly referred to. The contest here is not between creditors claiming any benefit under the deed seeking to enforce an execution of the trust, but complainants claim through a creditor acting in defiance of the title of the trustees. The defendant is not a creditor, and does not claim title through the trustees in the execution of their trust.

The bill charges that the deed of assignment was executed to hinder, delay, and defraud creditors. Patent proof of such intention is shown by the fact that the assignees never took any steps to enforce the trust, never

took possession or control of the property, never sold it in execution of the trust, and never paid a creditor of the assignor. The creditor under whom the complainants claim title, instead of acquiescing in or recognizing the validity of the assignment, proceeded to judgment, and levied execution upon the lands as the property of Dennis Robinson. The property was sold under such execution levy, the sheriff's deed executed, and it has passed though successive purchasers; and for more than 29 years this action has remained unchallenged by either party to the assignment, or by any creditor of Robinson. The testimony shows conclusively that the assignment was a mere formality, executed with the intention of defrauding, delaying, and defeating creditors of Dennis Robinson. Two, at least, of the assignees asserted as early as 1859 that they had never accepted the assignment, and had never done anything under it, and never should; and Dennis Robinson himself directed the assignee of the judgment, who obtained the title under the sheriff's sale, to convey the title which he so obtained to a parcel of the land to a Mr. Ryan, in payment of a debt due from Robinson to Ryan.

The assignment refers to a schedule of creditors who were preferred in the instrument. No schedule of creditors accompanies the instrument, and it does not appear that any was ever prepared or furnished to the assignees. It was an imperfect instrument when delivered, and two of the grantees named in it stated that they had never accepted it; and if it can be said that they did in fact accept the instrument in writing by signing their names to the instrument as recorded, still it cannot be said that they ever accepted a complete assignment.

The assignment contains this clause:

"They shall apply the surplus or residue of said trust moneys in and towards the payment and satisfaction of

the several debts and sums of money due to the persons or creditors named in the schedule marked 'A,' as aforesaid, and enumerated in and under class number one, and so marked and indicated, and they in the successive order in which they relatively stand in said class, to wit, after full payment and satisfaction of the debts due the first, then the residue, if any there be, to be applied to the payment of the second, and then in succession to the third, and that thus successively the whole may be paid as far as the property and effects hereby assigned as aforesaid may or shall be sufficient to pay the same; and, after payment and satisfaction of such last above referred to debts and creditors mentioned in class number one, so marked in said schedule, and of all such costs, charges, and expenses aforesaid, then in trust, that they, or the survivor of them, his executors or administrators, do and shall apply the surplus or residue of said trust moneys in and towards payment and satisfaction of the several debts and sums of money due to the persons or creditors named in said schedule marked 'A,' as aforesaid, and enumerated in and under said class number two, so marked and indicated in said schedule, to them *pari passu*, and without any preference or priority of payment in reference to the order or succession in which they stand in said class."

While it will not invalidate an assignment which professes to convey all the assignor's property, and refers therein to a schedule of such property to be annexed, if such schedule is not annexed at the time of the execution of the assignment, yet I have not met with any authority which holds an assignment valid as against non-consenting creditors, where the assignor prefers certain creditors over others, unless such creditors are specified in the assignment itself, or embraced in a schedule annexed at the time the instrument was executed. The reason is obvious. It cannot be left to the debtor or to the assignees to say what creditors shall be preferred after the assignment is executed. This would leave the door open to the grossest frauds and favoritism. The debtor might sell his favors at a premium, and the assignees

would not know at the time they accepted the trust whom they were to pay in preference to other creditors of the debtor. Thus, in *Averill v. Loucks*, 6 Barb. 470:

"Where an assignment directed the assignees to pay the debts specified in the schedules annexed thereto according to the priority of the several schedules, and provided that such schedules should be made within 60 days, and be annexed to and form a part of the assignment, but did not prescribe what debts should be inserted in the respective schedules, or in what order they should be arranged therein, the preparation of such schedules being left entirely to the discretion of the assignors, and it appeared that such schedules had not been made out and annexed to the assignment previous to its execution, but that they were prepared by the assignors and annexed at some subsequent time, held, that the assignment was fraudulent and void."

And Mr. Burrill, in his work on Assignments, § 153, says:

"Where a preference is intended to be indicated by a schedule, it must be distinctly shown by some separation of the debt intended to be preferred from the other debts specified. The mere placing of a debt at the head of a schedule is not sufficient. And where an assignment refers to one or more schedules as fixing the order in which certain preferred creditors shall be paid, it is essential that they should be annexed to the assignment previous to its execution, unless the assignment itself prescribe what debts shall be inserted in them, and in what order."

And he cites, in support of what has been quoted, *Winslow v. Assignees of Ancrum*, 1 McCord, Eq. 100, and *Averill v. Loucks*, 6 Barb. 470. See, also, *Barnum v. Hempstead*, 7 Paige, 571; *Boardman v. Halliday*, 10 Id. 227; *Sheldon v. Dodge*, 4 Denio, 221; *Hyslop v. Clarke*, 14 Johns. 462; *Kercheis v. Schloss*, 49 How. Pr. 284.

It is urged by defendant's solicitor that the complainants are too late in seeking relief against the alleged fraudulent and invalid conveyance; that, under the decis-

ions of this Court, the judgment creditor through whom complainants claim should have filed his bill in aid of his execution before sale; and in support of this position he cites the following: *Messmore v. Huggard,* 46 Mich. 558; *Cranson v. Smith,* 47 Id. 189; *Jenison v. Rankin,* 57 Id. 49; *Munson v. Ellis,* 58 Id. 335; *Edsell v. Nevins,* 80 Id. 146. If those cases were applicable to the present, I should be loth to follow them where to do so would be to inflict palpable injustice upon the parties who have obtained rights relying upon the decisions and intimations of this Court in its reported cases. In *Cleland v. Taylor,* 3 Mich. 201, the action was ejectment, and the plaintiff relied upon the sheriff's deed, made upon a levy upon land which the plaintiff claimed had been conveyed by defendant with intent to defraud his creditors, and the question raised and decided was that the plaintiff could introduce evidence tending to show that the conveyance was executed with intent to hinder, delay, and defraud the creditors of the defendant in the execution. The presiding judge, at page 206 of the opinion, said:

"It is said that a conveyance intended to defraud creditors is not void, but voidable only at the instance of such creditor. In some respects this is so. As between the parties to the deed it conveys the legal title, which is good also as against the creditor until he pursues his remedy *as such creditor,* and acquires a lien upon or an interest in the land. When he has done this, the deed is void as to him, and may be treated by him in the prosecution of his remedies as creditor as absolutely void in law as well as in equity. The statute makes no distinction;" citing the Revised Statutes, p. 328.

And in *Trask v. Green,* 9 Mich. 368, Mr. Justice CHRISTIANCY says:

"Where the title before the conveyance has been vested in the debtor himself, and he has conveyed for the purpose of defrauding his creditors, the right of creditors to

88 MICH.—9.

levy and sell rests upon the ground that, the deed being void as to creditors, the legal title, as to them, still remains in the debtor, as if no conveyance had been made. The land may therefore be sold on execution at law, without invoking the aid of a court of equity; and the purchaser may, if he chooses, try the question of fraud in an action at law (*Cleland v. Taylor*, 3 Mich. 201, and cases cited); and he may, doubtless, file his bill in a proper case, after sale, to remove the cloud created by the fraudulent conveyance. But it is generally more advantageous to all parties, and therefore more common, for the creditor to bring his bill before sale, in aid of the execution. And this may be done at any time after the creditor has obtained a lien upon the land by his judgment, when that of itself creates the lien, or only after the levy of an execution, where, as in this State, the levy is necessary to give the lien."

It is true that what was thus said by Mr. Justice CHRISTIANCY was only the reasoning of the Court, but all of the Justices of the Court concurred in this reasoning, Mr. Justice CAMPBELL so expressly stating. These decisions were not questioned until the case of *Messmore v. Huggard*, 46 Mich. 558. In that case it was claimed that the mortgage had been executed by the judgment debtor before the levy of execution, which mortgage, it was claimed, was fraudulent and void as to the judgment creditor, and after sale he filed a bill to have the mortgage set aside and discharged as a cloud upon his title. The defendant claimed that the bill should have been filed before sale in aid of execution; and Mr. Justice COOLEY, at page 561, said:

"The point has never before been distinctly presented in this State, though since the decision in *Cleland v. Taylor*, 3 Mich. 202, it has perhaps been assumed that the right to question the *bona fides* of any conveyance by the judgment debtor was as much available to the creditor after he had caused the land to be sold on execution and become the purchaser as it was before. In that case the debtor had made an absolute conveyance, and the creditor,

without proceeding to have the conveyance set aside, had become purchaser at the execution sale, and then brought ejectment. The defendant in ejectment questioned the right to inquire into the fraud in a court of law for the purpose of avoiding the deed; but the Court, citing and relying upon *Jackson v. Myers,* 18 Johns. 425; *Jackson v. Parker,* 9 Cow. 73; *Jackson v. Timmerman,* 7 Wend. 436, 12 Wend. 299; and *Stephens v. Sinclair,* 1 Hill, 143,— decided that it was as competent to set aside the fraudulent deed by suit at law as by bill in equity, and that ejectment by the purchaser at the execution sale was a suitable proceeding for the purpose. There are numerous decisions in other states to the same effect, and we do not question their authority. But the case of *Cleland v. Taylor,* and the others referred to, have little analogy to this. In those cases the judgment debtor had conveyed away his whole interest, and any offer to sell on an execution against him necessarily attacked his conveyance. The judgment debtor would understand this, and his grantee would understand it and take his measures accordingly. So would all persons who should be inclined to become bidders at the sale understand it, and all would stand on an equality with the judgment creditor in making bids. No doubt it would be proper for the sheriff expressly to give notice at the sale that the validity of the debtor's conveyance was disputed; but, as the offer to sell would be idle and meaningless if the conveyance was not contested, any such notice would obviously be unimportant. In this case the situation was altogether different. The judgment debtor had only mortgaged his lands, and an interest remained in him which was subject to execution sale without questioning the mortgage."

It is thus seen that *Messmore v. Huggard* does not overrule *Cleland v. Taylor.*

In *Cranson v. Smith,* 47 Mich. 189, the bill was filed in aid of execution by a purchaser at the execution sale. The execution debtor had, prior to the levy, executed a quitclaim deed of the premises to his wife, which the complainant alleged was done with the intent to cheat, delay, and defraud his creditors. It was held that the bill in aid of execution must be filed before sale, and could not be afterwards. Mr. Chief Justice MARSTON

distinguishes the case from *Cleland v. Taylor* and *Trask v. Green*. It will furthermore be perceived that this case originated since the amendment to the statute in 1867,[1] by which the practice is regulated. In *Jenison v. Rankin*, 57 Mich. 49, the Court pointed out the distinction which the amendment to the statute made in the remedies to be pursued, and called attention to the fact that *Cleland v. Taylor* was decided under the Revised Statutes of 1846, and that since the amendment the parties must pursue the remedy provided by the amendment; and this was again announced in *Edsell v. Nevins*, 80 Mich. 146.

The levy and sale were made in this case under the statute authorizing a levy of execution on lands fraudulently conveyed, as such statute read before amended in 1867, and as it read when the cases of *Cleland v. Taylor* and *Trask v. Green* were decided; and so we may say that, if the deed of assignment was valid upon its face, the creditor at that time might attack it by a levy and sale upon the real property as the property of the debtor, and, as pointed out by Mr. Justice COOLEY in *Messmore v. Huggard*, the judgment debtor had conveyed away his whole interest, and any offer to sell on execution necessarily attacked his conveyance. It has never been decided in this State, in cases which arose previous to the amendment of the statute in 1867, that an execution purchaser cannot attack a conveyance made in fraud of creditors, either in an action of ejectment or by bill in equity to remove a cloud upon the title.

In this case the defendant is not in a position to appeal to the conscience of a court of equity in his behalf. After the lapse of more than 25 years, through some one's instigation, the trustees in the deed of assignment, without having attempted to execute the trust, reconveyed in consideration of one dollar the land described in

---

[1] Act No. 95, Laws of 1867 (How. Stat. § 6108).

Schedule B to Dennis Robinson, the debtor who executed the assignment. In this they merely attempted to discharge themselves of the trust, not to execute it. Robinson obtained no right, title, or equity superior to the purchaser at the execution sale against him. Utley was both prior in time and prior in right. Robinson could not successfully contend against the title of the execution purchaser, and O'Conner stands in no better situation than Robinson.

I do not consider it necessary to place the decision of this case upon the ground simply that the assignment was executed for the purpose of cheating, delaying, and defrauding creditors, although I think it might safely be rested there, but I place it also upon the ground that the conveyance is void upon its face, and conveyed no title whatever to the grantees, for the reason that it did not contain the names of the creditors preferred, either in the body of the instrument or in the schedule annexed at the time of its execution.

If the instrument were a valid one, the defendant in the original and complainant in the cross-bill would not be entitled to the relief here prayed. If there was a trust which had not been executed by the trustees, he would become trustee by the transfers under which he claims title, and his title would be subject to the execution of the trust in equity, and he could not be allowed relief without paying the debts for which the assignment was executed; but it is not necessary to consider this branch of the case, as the other is a sufficient answer to his claims for relief, and it follows that the decree of the court below should be affirmed.

The other Justices concurred.