[No. 282. Decided January 13, 1892.]

CHRISTINA WAGNER, *Appellant*, v. JAMES W. LAW, MARY A. LAW, ALICE M. STOUT, JOHN W. STOUT AND THOMAS HINDS, *Respondents.*

FRAUDULENT CONVEYANCE—SALE ON EXECUTION—QUIETING TITLE—PLEADING—LIMITATIONS—APPEALS—MODIFICATION OF JUDGMENT.

Under the laws of this state, a judgment creditor may purchase at execution sale the lands of his debtor which have been fraudulently conveyed, and may thereafter maintain an action for the purpose of setting aside such fraudulent conveyance, and quieting the title acquired by the judgment creditor at such execution sale.

Where a conveyance is fraudulent as to creditors, and the parties to the transaction are parties to the fraud, they cannot invoke the protection of the lien laws in reference to the filing of transcripts of judgments.

Where the facts stated in a complaint to quiet title show that the plaintiff has a valid interest in the land, it is sufficient, without alleging specially that plaintiff has a valid interest in, or right to, the possession of the land.

A complaint to quiet title to certain lands, acquired by plaintiff at a sale on execution, after an alleged fraudulent conveyance by the judgment debtor, does not state facts sufficient to constitute a cause of action when it fails to allege that there was no other property of the judgment debtor at the time of conveyance out of which the creditor could satisfy his judgment.

An action to quiet title as against a fraudulent conveyance of land is not an action for relief on the ground of fraud, and is not subject to the limitations imposed by either § 28 or § 33, Code 1881.

Where the judgment in the superior court dismissing a complaint has been affirmed on appeal, the supreme court will not entertain a motion to modify its own judgment so as to remand the case to the superior court with leave to amend the complaint. (HOYT, J., dissents.)

### Appeal from Superior Court, Pierce County.

Action by Christina Wagner against James W. Law and others to set aside certain fraudulent conveyances which constitute a cloud on plaintiff's title to certain lands. Judgment on demurrer dismissing the complaint, from which judgment plaintiff appeals.

*Judson & Sharpstein,* and *Crowley & Sullivan,* for appellant.

*B. F. Dennison,* and *James M. Ashton,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This is an action brought by the judgment creditor, who was also an execution purchaser, to set aside a fraudulent conveyance made by the judgment debtor, which is alleged to be a cloud upon the plaintiff's title. The complaint alleges the fraudulent conveyance of the land for the purpose of defrauding his creditors, and especially the plaintiff; alleges the execution and sale and conveyance of the land in question to plaintiff. A demurrer was interposed to the complaint and sustained by the court below. Judgment was entered in favor of the defendant, and the case is appealed here. The sixth count in the demurrer was as follows:

"That said complaints, and each of them, show upon their face that by proceeding to a sale of the land on execution before the previous deeds of the judgment debtor had been set aside by bill in equity, and the title reinvested

in him, the plaintiff waved her right to claim relief in equity."

The main question to be determined by this court is involved in this proposition, it being contended by the respondent that a bill to quiet title, or to remove a cloud, must be brought by the judgment creditor in the nature of a creditor's bill, or after an execution and return of *nulla bona*, and that the fraudulent conveyance must be set aside before the property is subjected to the operation of the execution; and that after such a sale it is too late to bring such an action. While the appellant insists that under our statutes, and the English statutes which are part of our common law, in addition to the other remedies which the law allows the creditor, he has a right to levy execution upon the property conveyed as if the same then stood in the name of the judgment debtor, and to advertise and sell the same in the manner provided by law as the property of the judgment debtor.

On this proposition, after an examination of all the cases cited which were available, and after as laborious and extended an investigation as time would permit, we are inclined to adopt the views of the appellant. The authorities in support of appellant's views on this proposition are certainly overwhelming, and we do not feel at liberty to disregard them in establishing a rule for this state. Nor do we think, as alleged by respondent, that the cases cited by appellant declaring the right of an execution purchaser to sustain a suit to remove a cloud on his title, were decided on local statutes different from ours. In some instances this doubtless was the case, but in many others the doctrine was sustained on the particular ground that such a conveyance falls within the provisions of the statute of frauds, and of 13 Eliz., which is in force, as we understand it, in the State of Washington by virtue of § 1 of the Code. This was the basis of the decision in *Hildreth v. Sands*, 2 Johns.

Ch. 35, where the doctrine was announced that a purchaser at a sheriff's sale, under the judgment of a creditor, is entitled to the benefit of the statute of frauds equally as the creditor himself. And as to the relative rights of the purchaser and the creditor, and the claim interposed that such a proceeding is inequitable because the property under such a sale is likely to be sacrificed, we quote the words of the chancellor in that case:

"The statute of 13 Eliz., which we have adopted, is said to be declaratory of the common law, and to extend to creditors and to all others who have any cause of action, and is to be construed liberally in suppression of fraud. Lord Coke says, in *Twine's* case (3 Co. 80), that it was so resolved by all the barons of the exchequer. So in *Tarvil v. Tipper* (Latch, 222), a bailiff who executed process was allowed to protect himself under this statute against a fraudulent gift, for it was observed that when the statute gives the principal remedy, it gives the incident. If it protects the creditor, it must protect his sale, and the purchaser under his judgment. The creditor, on any other construction, would be deprived of the fruit of his judgment, and the execution would be nugatory. There can be no doubt but that the plaintiff, as a purchaser under Whitney's judgment, is entitled to all the relief that the creditor himself would have been entitled to, for he stands in his place, and is armed with his rights, and though he be a purchaser at a very low price, yet it was a fair purchase in the regular course of law, and it was owing to the unwarrantable acts of the debtor himself, in throwing a cloud over the title, that his property was thus sacrificed. It does not become the parties to the fraudulent deed to complain of the plaintiff's cheap purchase. However, it may be regretted that the property has yielded but a very small compensation to the creditors, this fact cannot interfere with the question of right. The auction price was an accidental thing, growing out of the peculiar circumstances of this case, and affects only the parties concerned; but whether such a fraudulent conveyance shall stand or fall, is a question deeply interesting to the whole community."

This decree was on appeal unanimously affirmed in the court of errors, April 14, 1877, and reported in 14 Johns. 492, where the court, in commenting upon this proposition, says:

"The statute, it is urged, protects creditors only from fraudulent deeds, and not a person standing in the situation of the respondent. This proposition is, in my judgment, without any foundation. All the respondent's right to the land in controversy is derived from and under the judgments under which he purchased; the judgments are his title; and he is placed, by the judicial sale which took place, precisely in the place of the creditors."

In Alabama, North Carolina and Louisiana the other doctrine has been announced by the courts, some of them on general propositions and others, especially in Louisiana, by reason of the provisions of local statutes. *Cranson v. Smith*, 47 Mich. 189 (10 N. W. Rep. 194), is a case exactly in point which holds squarely the doctrine contended for by respondent. There it was held that the purchaser at an execution sale of the defendant's interest had no equity to file a bill to set aside a conveyance in fraud of creditors made by him before the date of the judgment. There is no attempt to review the authorities in this case. The court agrees with the contention of the plaintiff that the interest of the defendant sought to be reached is not an equitable one, but as between him and his creditors is the legal title, the object being to set aside a deed alleged to be utterly void as to creditors, and bases its decision on the main question solely, on the ground that such a course would tend to prevent an honest competition at the sale; and in support of that it cites only a prior state decision, *Messmore v. Huggard*, 46 Mich. 558 (9 N. W. Rep. 853), which it evidently felt bound to follow. And on the motion for re-hearing it re-affirmed its reliance on that case. A consideration of the opinion rendered by Judge Cooley, in *Messmore v. Huggard*, convinces us that the decision in that case was

misunderstood, or at least misinterpreted, in *Cranson v. Smith.* Expressions and opinions of a court must be construed with reference to the subject-matter under consideration and the principles involved in the case. An investigation of the case cited shows that the statement relied upon by the court had no application to the principles involved in the case which it was deciding, or to the circumstances surrounding it. In *Messmore v. Huggard* the court re-affirms the decision in *Cleland v. Taylor,* 3 Mich. 202, where it was held that the right to question the *bona fides* of any conveyance by the judgment debtor was as much available to the creditor after he had caused the land to be sold on execution and became the purchaser as it was before, but the court distinguished just such a case as the one at bar, so far as the interest sold is concerned, from the case under consideration, by saying:

"But the case of *Cleland v. Taylor,* and the other referred to, have little analogy to this. In those cases the judgment debtor had conveyed away his whole interest, and any offer to sell on an execution against him necessarily attacked his conveyance. The judgment debtor would understand this, and his grantee would understand it and take his measures accordingly. So would all persons who should be inclined to become bidders at the sale understand it, and all would stand on an equality with the judgment creditor in making bids. No doubt it would be proper for the sheriff expressly to give notice at the sale that the validity of the debtor's conveyance was disputed, but as the offer to sell would be idle and meaningless if the conveyance was not contested, any such notice would obviously be unimportant.

"In this case the situation was altogether different. The judgment debtor had only mortgaged his lands, and an interest remained in him which was subject to execution sale without questioning the mortgage. There is no doubt the judgment creditor might proceed to have this interest sold, and if he might also sell the complete title with the right to have the mortgage annulled afterwards, we must see

whether he did the one or the other in this instance.  On
this point the bill is silent, but the silence itself seems to
us altogether conclusive against the complainant's case.  It
does not appear by the bill that the sheriff in any of his
action questioned the validity of the mortgage; it does not
appear that he offered to sell anything beyond the judg-
ment debtor's apparent interest in the land; it does not ap-
pear that at the time of the sale anything was said or done
that would have apprised Francis Huggard, the mortgagee,
that the right to contest the mortgage was involved in the
sale, or that would have given one coming there in the char-
acter of bidder to understand that something besides the
equity of redemption was being sold.  A stranger to the
judgment, purchasing under such circumstances, would have
purchased the equity of redemption only, for he would have
bid for nothing else, and would have offered and paid only
what he considered the equity of redemption worth to him.

. . .

"But nothing can be plainer than that, if the judgment
creditor could bid with the secret assurance that he was to
have an unencumbered title, when others must suppose they
were buying subject to the mortgage, this assurance gave
him an advantage in bidding to the full amount of the mort-
gage, and practically put competition entirely out of the ques-
tion.  Not only would this be unfair to other bidders, and
for that reason inadmissible, but it would be particularly
unfair to the mortgagee.  When the sale appears to be of
the equity of redemption only, the mortgagee has no occa-
sion to trouble his mind about it; but if he were distinctly
notified that it was made in hostility to his mortgage, he
might, even if conscious of his good faith, prefer to re-
deem rather than encounter the risks of litigation.  This
would be his legal right, and it cannot lawfully be taken
from him through a secret understanding between the offi-
cer and the creditor of which he has neither actual nor im-
plied notice."

We feel justified in presenting this extended quotation
for the reason that *Cranson v. Smith* is very largely relied
upon by the respondent, an authority which, it seems to
us, is the most squarely in point in favor of their conten-

tion; and that decision seems to be based on a misconception of this case. *Cranson v. Smith* was afterwards overruled in the United States circuit court in *Orendorf v. Budlong*, 12 Fed. Rep. 24, where it was also held that the interest of the creditor in the land of his debtor fraudulently conveyed is a legal and not an equitable asset, and it will be observed that was also held in *Messmore v. Huggard*. *Orendorf v. Budlong* is a well considered case, in which the inconsistency of the decision in *Cranson v. Smith* is clearly shown. Says the court:

"But why cannot a purchaser under an execution sale move to have the conveyance declared void? We know of no reason. Clearly the authorities are in his favor. Indeed, the judgment creditor himself, if he purchases at an execution sale, must take proceedings as purchaser, and not as judgment creditor, to attack the conveyance. His rights as creditor are merged in those of purchaser."

And on that proposition is cited Bump on Fraudulent Conveyances, 488; *Chandler v. Von Roeder*, 24 How. 224; *White v. Cole*, 24 Wend. 116; *Murphy v. Orr*, 32 Ill. 489; *Barr v. Hatch*, 3 Ohio, 527; *King v. Bailey*, 6 Mo. 575; *Sands v. Hildreth*, 14 Johns. 497. The court further says:

"Conceding the rule established in *Messmore v. Huggard* to be correct, it seems to us that the case of *Cranson v. Smith*, so far from being in affirmance of it, is a clear departure from it. We know of no authority which supports the principle announced in that case. None are cited in the opinion, and, so far as our researches have extended, none can be found in books."

*Hager v. Shindler*, 29 Cal. 48, is another leading case in which the right of the execution purchaser to bring this action is squarely sustained, and the decision was based on the general powers of a court of equity.

"It is enough," said the court in that case, "that the plaintiff could have established his title as against the title of Simon Shindler in an action of ejectment. Before

the case can be considered as beyond the reach of a court of equity, it must be made to appear that the legal remedy would be adequate and complete. The appeal here is to that branch of the concurrent jurisdiction in which the peculiar remedies afforded by courts of equity constitute the principal ground of jurisdiction. The relief asked is, that certain deeds, alleged to be fraudulent, may be canceled by decree. The bill is brought upon the principle of *quia timet;* that is for fear that the deeds may be vexatiously or injuriously used against the plaintiff when the evidence to impeach them may have been lost. The justice invoked is not remedial so much as precautionary or preventive. If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can retain it only for some sinister purpose. If it is a deed purporting to convey lands or other hereditaments, its existence in an uncanceled state necessarily has a tendency to throw a cloud over the title; and it is always liable to be applied to improper purposes. Preventive justice is what is needed, and a court of law has no power to administer it. *Shattuck v. Carson,* 2 Cal. 588."

And so, without further particularly reviewing the authorities cited, or re-citing them in this opinion, we are of the opinion that they overwhelmingly sustain the doctrine that this kind of an action can be sustained by the purchaser at an execution sale. The principal, and about the only real, objection which can be urged against it, is the inadequacy of the consideration which is liable to be obtained at the sale, and while it is no doubt the purpose of the law that all property which is sold under the process, and by authority of the law should bring a fair price, and should not be sacrificed, yet the fraudulent conveyancer is in no position to insist upon a limitation being placed on the rights of others in order that he may escape the results of his own wrongdoing. The old maxim is, "He who asks equity must do equity," and it would seem that no good reason can be shown why there should be a sus-

pension of the rule for his benefit in this character of cases.
Mr. Pomeroy, in his Equity Jurisprudence, in defining
this maxim, says the meaning is that whatever be the nature
of the controversy between two definite parties, and what-
ever be the nature of the remedy demanded, the court will
not confer its equitable relief upon the party seeking its
interposition and aid, unless he has acknowledged and
conceded, or will admit and provide for, all the equitable
rights, claims and demands justly belonging to the adverse
party, and growing out of, or necessarily involved in, the
subject-matter of the controversy.

A large portion of respondent's brief was devoted to the
discussion of the relative meanings of the words "void"
and "voidable" as sued by the courts, the text writers and
the lawmakers, and what construction and force should be
given to these words respectively and relatively.   On this
subject the authorities are irreconcilably conflicting, and the
reasoning is much more conflicting than the decisions, for
a review of the cases cited will show that even where the
same conclusion is reached, the reasons which sustain the
conclusion are conflicting and antagonistic; so that it seems
to us that a review or discussion of this question in the
light of the cases cited would be unprofitable.   Suffice it
to say that under the common law, as well as under our
own statute (and our statute, while it is stripped of some
of the verbosity of the English statutes, plainly enunciates
the same rule), as between the creditor and fraudulent
conveyancer the conveyance is void.   And conceding that
it is only voidable, and that something has to be done by
the creditor to change it from a voidable into a void con-
veyance, that something in this case has been done, and the
plaintiff avoided it by issuing execution and levying upon
and selling the land by virtue of that execution as the
property of the judgment debtor, and if it was a fraudu-
lent conveyance it then became absolutely void, and the

legal title and right to the land became vested in the purchaser, and having such right and title he has a right to the interposition of a court of equity to remove any cloud that interferes with the free and perfect enjoyment of his rights.

In this case there are no facts to consider, as the case is here on a demurrer to the complaint, and under the well known rule that, whatever is properly pleaded is conceded to be true by the demurrer, we discuss the case from the standpoint of actual fraud on the part of the judgment debtor and his grantees, and of the legal sale and conveyance to the plaintiff. We do not see the application of the · discussion on the subject of liens with reference to the filing of transcripts of judgments to this case. The recording laws are made for the purpose of giving constructive notice where actual notice was impracticable or impossible, and it has been uniformly held that he who is shown to have actual notice will not be allowed to take any advantage of the lack of constructive notice. Any other rule would be so manifestly unjust and inequitable that it could not be entertained for a moment. In this case it is assumed that these conveyances were fraudulent and that the parties to the transaction were all parties to the fraud; and if that be true, they had no right to notice of any kind, and the lien laws have no application to them whatever. There are no innocent purchasers here demanding protection; there are no other creditors, as there were *In re Estes*, 6 Sawy. 459; and the position taken by Judge DEADY in that case, it seems to us, instead of refuting, clearly sustains appellant's contention; and he expressly distinguishes *Hager v. Shindler*, which is a parallel case with the one at ·bar, from the case which he had under consideration, which was a contest between the creditors. Speaking of that case he says:

"But it does not appear that any question concerning the operation or effect of the lien of a judgment arose or

was decided in *Hager v. Shindler.* That was a case where the purchaser of real property at a sheriff's sale, upon an execution to enforce a judgment against one who had, prior to the judgment, conveyed the premises in question in fraud of his creditors, brought a suit to annul such conveyance as a cloud upon his title, and the court held that the suit could be maintained. Nothing was claimed under or by virtue of the lien of the judgment. Indeed, the statement of the ruling in *Hager v. Shindler* by the court *In re Beadle* shows this. It is: 'In that case it was held that the purchaser of land at a sheriff's sale may maintain a bill to set aside and annul, as a cloud upon the title, a deed of the land given before the judgment by the judgment debtor without consideration, and to defraud creditors.' And the subsequent cases of *Ferris v. Irving,* 28 Cal. 646, and *Stewart v. Thompson,* 32 *Cal.* 263, referred to by the court, and particularly the concurring opinion of Judge SAWYER, in the latter case, are only to the same effect, that the conveyance is void as to the creditor, who may attack it and divest the grantee of his right under it by a sale upon an execution against the grantor in favor of such creditor. To justify this conclusion, it was not necessary that there should be any judgment lien in the case, or even that the judgment should ever have been docketed. The seizure and sale upon the execution was a direct and legal assertion of the creditor's right to treat the conveyance as void, and the conveyance by the sheriff to the purchaser invested the latter with the title to the premises, and these California cases only decide that the purchaser, as such, and as the successor in right of the judgment creditor, could maintain a suit to set aside the fraudulent conveyance as a cloud upon this title without first bringing ejectment for the possession."

So that it 'will be seen that in Judge DEADY's opinion there were no legal barriers to the invocation of the remedy sought here in this kind of a case, and an examination of the many authorities cited by the learned judge, and his comments upon them, shows that this distinction was maintained almost universally, notwithstanding mere remarks of the different courts, which, if detached and considered

without reference to the circumstances of the particular case decided, might seem to warrant a different interpretation. And this same distinction was kept in mind by Justice FIELD, who affirmed the judgment of the court on appeal to the circuit court. Says Justice FIELD:

"The question for discussion is whether the judgment creditors acquired by their judgment a lien upon the real property of Estes, so as to entitle them to assets in preference to other creditors."

But it cannot be gathered from either of the opinions in the above entitled case, or from the cases cited, that the parties to the actual fraud can invoke the aid of the lien laws, or that the creditor, stated negatively, cannot avoid the conveyance by moving against the land fraudulently conveyed, by levy and sale.

It is also contended by respondent that it is not alleged in the amended complaint, or elsewhere, that the plaintiff has any valid interest in, or right to, the possession of the land in question, and that these are essential requirements in an action to quiet title. While it is not alleged in so many words that the plaintiff has a valid interest in, or right to, the possession of the lands in question, conceding the matters stated in the complaint to be true, it would be hard to escape the conclusion that she did have a valid interest in the land. If the facts stated show the interest, that is sufficient; the allegation of interest outside of facts would amount to nothing more than pleading a conclusion of law. Under our statute it is not necessary that the plaintiff must be in possession to maintain an action to quiet title. This was decided in *Spithill v. Jones, ante,* p. 290, and in *Jackson v. Tatebo, ante,* p. 456, at this term of court.

On the fourth proposition discussed in plaintiff's brief, however, viz., that the conveyance cannot be impeached as fraudulent unless it be shown by distinct averment in the complaint that the debtor had no other property subject to

execution at the time the conveyance was made, we are inclined to think that the weight of authority and the better reasoning is with the respondent. It is true that the cases cited by respondent fall within the class of cases where the judgment creditors are seeking by aid of creditors' bill to subject the property conveyed to the payment of the debts of the various creditors, or where the judgment creditor, after execution has been returned *nulla bona,* has levied upon the property fraudulently conveyed, and moved to set aside the alleged fraudulent conveyance and subject the property seized to sale under the execution issued. And it is also true that there are a few cases, notably *Hager v. Shindler,* that undertake to distinguish between that class of cases and the one at bar, but the argument is not a convincing one to us and we are unable to see the difference in principle. It seems to us that the same reasons attach equally in both cases. The only theory upon which a court of equity would interfere in the first class of cases is, that there is no adequate remedy at law; but if the debtor had other property out of which he could collect his debt he would have an adequate remedy at law, and it would be difficult to establish the fact that the conveyance *was* fraudulent, and that it was done for the purpose of preventing creditors from collecting their debts, without showing at the same time that the debtor had no other property subject to execution. To assert that the conveyance was made for the purpose of defrauding creditors, while at the same time the debtor had other property out of which the creditor could make his debt, would be an inconsistent statement. And the fraudulent conveyance is *the* fact that must be established, or the plaintiff cannot recover in this case, just as it was the fact that had to be established when the action was brought in the nature of a creditor's bill; and the proof necessary to establish that fact must be just as convincing, and the allegations under which the proof

33—3 WASH.

can be made just as clear and distinct. It seems that this is the main test of the fraudulency of the conveyance; to hold otherwise would be to hold that every voluntary conveyance, or conveyance without consideration, must be held _prima facie_ fraudulent. If a man saw fit to make a voluntary conveyance to his wife or child, or to any one else, it does not concern his creditors if he still have property left sufficient to satisfy their just and legal demands; and if at the time of the sale of this land by Law he had other property out of which the plaintiff could have collected her debt, she could not then be heard to complain of this conveyance. And there is no more reason why she should be heard now, or why the relative positions of the parties with respect to this question should be changed.

In _Sands v. Hildreth_, 14 Johns. 493, the court seems to base its judgment on the theory that such showing is a matter of defense, and that the burden of proof was upon the defendant, but we see no more reason for shifting the burden of proof in this class of cases· than in the class of cases where it is almost universally held that insolvency must be pleaded and proven, and it seems to conflict with the general proposition of law that, where fraud is alleged it must be proven, and that the burden will not be placed upon the defendant to prove affirmatively that the transaction was without fraud. In _Vasser v. Henderson_, 40 Miss. 519; 90 Am. Dec. 351; the court, after announcing the doctrine as claimed by appellant, adds:

"We do not mean to say that every voluntary conveyance is a fraudulent one within the meaning of the statute. The plaintiff making a levy on the property undertakes the responsibility of showing that, upon the circumstances of the particular case, the transaction is one which the law will not sanction."

But it seems that, so far as the plaintiff's interests were concerned, it was no matter what the particular circumstances of the case were, provided there was sufficient other

property left to apply on his debt. This was *the* particular circumstance which was necessary to be proven. No creditor has any right to ask a court of equity to interfere in his behalf to the end that he shall have his judgment satisfied out of the proceeds of some particular property of his debtor. It may be added, however, that in the case just cited there had been no sale of the property as in this case. That was a case where the property had been levied upon, and the proceeding was to set aside the fraudulent conveyance, and to subject the property seized to sale under the execution. This decision is in the teeth of the uniform decisions, and is the case described by appellant as the second method of procedure, and where, according to his own statement in his brief, "the essential allegation of such a case is the issuance of the writ of execution and the return *nulla bona.*" *Pulliam v. Taylor*, 50 Miss. 551, decides that the jurisdiction of a court of equity is ample as before or after sale to set aside a fraudulent conveyance, and we are not able to find that they passed at all on the question now under consideration, unless it may be inferred from the fact that they founded their decision on the question involved, viz., the right of the party to set aside the conveyance after sale on the particular ground that the statute of frauds denounces absolute nullity upon this character of conveyance made with intent to hinder, delay or defraud creditors, and that, so far as the judgment creditor is concerned, it is as though the conveyance had never been made. In *Harrison v. Kramer*, 3 Iowa, 543, and which completes the list of cases cited by appellant on this point, all that is decided is, that the judgment debtor, if he saw fit, may sell the fradulently conveyed property under his execution, and bring his action afterward to quiet the title, and that in such a case it is not necessary to have a return of *nulla bona.* But it is not decided that the question of insolvency need not be put in issue in any manner in such

a proceeding, and this was the construction afterward placed upon that case by the supreme court of Iowa in *Pearson v. Maxfield,* 51 Iowa, 76 (50 N. W. Rep. 77), which was a case like the one at bar, where the execution purchaser brought an action to set aside the conveyance on the ground of fraud to creditors.    Said the court:

"If, at the time of the issuance of the execution, the execution debtor had other property out of which the execution could have been satisfied, the plaintiff should have levied upon such property instead of upon the property in question, which could be effectually reached only through the aid of a court of equity.    It is usual, as preliminary to a levy upon property alleged to have been fraudulently conveyed by the execution debtor, to have a return of execution 'no property found.'    It has sometimes been thought that this is absolutely necessary, but it was held in *Postlewait et al. v. Howes,* 3 Iowa, 365, and *Gordon v. Worthley,* 48 Iowa, 429, that the fact of insolvency may be proven in other ways.    But no case has gone so far, we think, as to hold that all proof of insolvency can be dispensed with. The action of *Gwyer v. Figgins,* 37 Iowa, 517, was brought by a creditor to set aside a conveyance as fraudulent, and was reversed upon the ground, among others, that the debtor's insolvency was not proven.    The appellant insists that there is no evidence in this case that the execution debtor was insolvent, and we think the point is well taken. No evidence is pointed out by the appellee, and we have failed to discover any."

Of course, if it is necessary to prove insolvency it is necessary to allege it, as the defendant has a right to prepare his defense with reference to the allegations of the complaint.    Believing that no substantial distinction can be made, so far as this question is concerned, between a case that is brought before and a case that is brought after sale, and believing further that in the absence of some other reason for a digression, that it is better to have a uniform practice in all this character of cases, regardless of which particular proceeding is adopted by the creditor, we decide

that this kind of an action cannot be sustained without an allegation and proof that there was no other property of the judgment debtor at the time of the conveyance out of which the creditor could satisfy his judgment or claim, and that, therefore, the complaint does not state facts sufficient to constitute a cause of action.

The eighth ground of defendant's demurrer is, that the cause of action is barred by the statute of limitations; it being an action for relief on the ground of fraud, it falls within the provisions of the 28th section of the code, which requires such action to be brought within three years, or else that it falls within the provisions of § 33, which requires the action to be brought within two years from the time the cause of action accrued. But we are of the opinion that this kind of an action does not fall within the provisions of either section referred to. It is not an action for relief upon the ground of fraud within the contemplation of § 28. That section we think has reference to suits by parties to contracts who are asking to be relieved from contracts that they were fraudulently induced to make, as where a deed has been fraudulently obtained, and suits of that character where fraud is the substantive cause of the action. But in this case the alleged fraud is only an incident; the deeds have been treated as fraudulent, and that fact was assumed by the sale of the land, as between the creditor and the fraudulent conveyancer. As we have before said, the fradulent deed conveyed nothing and was rendered absolutely void by the levy and sale; and the title was vested in the purchaser by the sheriff's deed, and as was said by the court in *Hager v. Shindler, supra,* the purchaser had then for the first time a title to be clouded, and "her right to bring her action does not antedate the facts in which it had its origin." It cannot be concluded that an action to remove a cloud falls within the statute of limitations for actions for relief upon the ground of fraud, for

there may be clouds upon the title without the aid of fraud. "Hence," as was said by the court in *Stewart v. Thompson*, 32 Cal 260, "fraud is a false quantity when we come to assign an action of this character to its proper class under the statute of limitations." In this case the plaintiff is the owner of the land; she has title to the land, and she alleges that this title is clouded by fraudulent deeds which are on the record. Judge SAWYER, in a clear and convincing 'concurring opinion in *Stewart v. Thompson*, says:

" After obtaining his sheriff's deed, he was in a position to recover possession of the land, notwithstanding the fraudulent conveyance, without first procuring its cancellation in equity. It was only necessary to prove the fraud when the fraudulent deed should be set up in the action at law to recover the possession."

Under the statute, an action for the recovery of the possession can be commenced within ten years. We think, therefore, that the action is not barred, though we do not now decide that an action to remove a cloud would be even subject to that limitation, or subject to any limitation at all, for as ten years had not elapsed between the time the purchaser received her deeds to any of these lands and the time of the commencement of this action, it is not necessary to discuss the subject of limitations further.

We have examined all the other points raised by the demurrer, and without discussing them specifically, find that they cannot be sustained. But the point last discussed we think well taken, and on that ground the demurrer will be sustained.

The judgment is therefore affirmed.

ANDERS, C. J., and STILES, SCOTT and HOYT, JJ., concur.

STILES, J.—Within the time allowed for filing a petition for re-hearing, the appellant moves to modify the judgment of this court by remanding the case to the superior court

with leave to appellant to amend her complaint herein, to avoid the holding that the insolvency of the fraudulent debtor must be pleaded, upon the ground that the question upon which this court affirmed the decision of the superior court was raised for the first time in this court, and was not suggested, raised or argued in the superior court. The object of this motion was avowedly to avoid the delay incident to the bringing of a new action; and the method taken to advise us as to what matters were and were not passed upon by the superior court is by filing an affidavit showing the briefs used on the argument of the demurrer, and the opinion of the court in deciding thereon. We do not think the practice here proposed can be acceded to. The judgment below was that the complaint be dismissed, and we have affirmed that judgment. It is, therefore, ended, and there would be no propriety in allowing amendments now. The motion, if granted, would require a reversal of the judgment to make it of any avail, which we cannot do upon the grounds stated in the opinion. Upon our own motion, however, we think we should modify the judgment here, as well as that in the superior court, by providing that the dismissal be without prejudice to a new action by the appellant authorized by law.

The motion will be denied and the judgment modified as above suggested.

ANDERS, C. J., and SCOTT, J., concur.

DUNBAR, J., not sitting.

HOYT, J.—I concur in modifying the judgment as stated in the above opinion, but dissent from that portion of such opinion as holds that the motion should be denied, as I think that it should be granted.