[No. 15513.  *En Banc.*  May 24, 1920.]

THE STATE OF WASHINGTON, *on the Relation of Hattie C. Gunn, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent.*[1]

PROCESS (4-1)—PERSONS AGAINST WHOM PROCESS MAY BE SERVED— NON-RESIDENTS. A non-resident who is temporarily in the state for the purpose of defending a pending action is privileged from the service of process in a civil transitory action. (HOLCOMB, C. J., MITCHELL, TOLMAN, and PARKER, JJ., dissent.)

Application filed in the supreme court September 2, 1919, for a writ of prohibition to prevent the superior court for King county, Dykeman, J., from proceeding further with a cause. Granted.

*Herbert E. Snook,* for relator.

*Gay & Griffin,* for respondent.

MACKINTOSH, J.—On February 1, 1918, a complaint was filed in the superior court of King county, seeking damages against the relator here for personal injuries alleged to have been suffered by the plaintiff.

[1]Reported in 189 Pac. 1016.

At that time, and at all times thereafter, the relator was not a resident of the state of Washington, but was and is a resident of the state of Nevada. On March 27, 1919, the action was brought on for trial, and the relator was present, having come to the city of Seattle from Nevada for the purpose of being present at the trial and defending the action. When the case was called for trial, the plaintiff dismissed her suit, and before the relator could leave the courthouse in which the court was sitting, a complaint was filed against her in an action seeking damages upon the same state of facts alleged in the original case just dismissed, and service was made upon the relator. Thereafter the relator entered her special appearance in this second action and asked the court to quash the attempted service of the complaint for the reason that she was privileged from such service and from being sued within the state of Washington, for the reason that she was within the state at the time of the alleged service as a party in an action of law then pending in the superior court of King county, and that she was present in the state solely to defend herself against such action. After argument, the motion to quash was denied, and the relator then commenced this action in this court, seeking a writ of prohibition directed to the superior court of King county, restraining it from proceeding further in the cause.

The sole question for determination is: Can a non-resident litigant, who comes to this state solely to defend a suit in which he is named as defendant, be served with process in a new suit while temporarily within this state? The action from the prosecution of which the relator seeks to escape is a civil action and a transitory one. The question is for the first time presented to this court, although it has been before the Federal courts and the courts of a majority of

the states upon many occasions, and has resulted in the adoption of majority and minority rules. We have no statute bearing upon the question. We are not concerned here with the privilege existing in criminal actions, nor the privilege of witnesses, nor the privilege of parties to civil actions who are residents of this state. The majority rule is that a nonresident of a state is privileged from the service of process in a new suit while he is temporarily in the state defending a suit then pending. This rule is founded upon the common law rule which granted the privilege to witnesses and parties in attendance upon the courts. This rule was, as the authorities state, primarily adopted for the purpose of preventing inconvenience to the courts and to facilitate the orderly and unhampered trial of causes. Witnesses, by the service of subpoenas, were compelled to attend court, and parties, although not under the same compulsion, were under a like compulsion, arising from the necessity of their being present in order to freely protect their interests which were at stake in the litigation. It was felt, and the rule was established to carry that feeling into effect, that witnesses and parties should be free to attend and to leave the court without having the work of the court embarrassed and interfered with by the service of civil process during their attendance. That freedom from service of process will be found to be referred to in the early cases as freedom from arrest, for the reason that, at the common law, the mode of process in civil actions had grown up as an arrest of the person. But the fact that it was a physical arrest is not determinative of the extent of the privilege, for the reason that arrest was the only means by which civil process could be served, and the rule was not established because the service happened to take that form, but for the underlying reason we

have indicated—that it facilitated the work of the courts.

Stress is laid by the courts adhering to the minority rule upon the fact that the common law rule referred to freedom from arrest. But when we bear in mind that that was the only form of civil process, and the further fact that the arrest in civil cases, at common law, soon developed into nothing more than a formality, the person upon whom civil process was served not being actually taken into custody, and being allowed, as a matter of right, to furnish bail, which consisted of his personal recognizance, so that no physical detention accompanied the arrest, which remained an arrest only in name and not in fact, we will see that the minority courts are basing their reasoning upon words, forgetting the substance. Those who criticize the majority rule lose sight of the underlying principle which gave rise to it and argue that the rule having originated when arrest of the person gave the court jurisdiction in civil cases, that now, such process being obsolete, the rule should be annulled. They mistake the early application of the rule for the reason of the rule.

It is not necessary to further discuss the origin and development of the common law upon this subject, but content ourselves with the statement of the fundamental idea on which the common law rule rested. At common law, witnesses and parties were privileged from the service of the then existing means of summons in civil actions during the time they were in attendance upon the court.

A review of the decided cases would extend this opinion to an unpardonable length and would reveal that the eminent judges of the various Federal courts and the supreme court itself, and the overwhelming majority of the state courts, are committed to the rule

established at common law, and that only a small minority of the state courts adhere to the contrary doctrine. We are content to follow the majority rule, not only because of its overwhelming endorsement by the courts and the eminent jurists who have given it their sanction, but as well because it is founded 'upon a reason which originally was sound, and which time has not altered. As Judge Cooley says, in *Mitchell v. Huron County Circuit Judge,* 53 Mich. 541, 19 N. W. 176:

"Public policy, the due administration of justice, and protection of parties and witnesses alike demand it. There would be no question about it if the suit had been commenced by arrest; but the reasons for exemption are applicable, though with somewhat less force, in other cases also."

In *Wilson Sewing Machine Co. v. Wilson,* 22 Fed. 803, it is said:

"It is important to the administration of justice that each party to a suit should have a free and untrammeled opportunity to present his case and that nonresident defendants should not be deterred by the fear of being harassed or burdened with new suits in a foreign state, from presenting themselves in such state to testify in their own behalf, or to defend their property."

To those who may be interested in an examination of the decisions, the following may be cited as cases in conformity with the ruling here made, holding that the privilege extends equally to exemption from the service of summons as to exemption from arrest: *Stewart v. Ramsey,* 242 U. S. 128; *Hale v. Wharton,* 73 Fed. 739; *Parker v. Hotchkiss,* 1 Wall. Jr. 269 (Fed. Cas. 10,739); *Wilson Sewing Machine Co. v. Wilson, supra; Brooks v. Farwell,* 4 Fed. 166; *Juneau Bank v. McSpedan,* 5 Biss. 64 (Fed. Cas. 7,582); *Small v. Montgomery,* 23 Fed. 707; *Kinnie v. Lant,* 68 Fed. 436;

*Mechanical Appliance Co. v. Castleman,* 215 U. S. 437; *Cain v. Commercial Pub. Co.,* 232 U. S. 124; *Atchison v. Morris,* 11 Fed. 582; *Nichols v. Horton,* 14 Fed. 327; *Morrow v. Dudley,* 144 Fed. 441; *Bridges v. Sheldon,* 7 Fed. 17; *Lyell v. Goodwin,* 4 McLean (U. S. Cir. Ct.) 29; *Peet v. Fowler,* 170 Fed. 618; *Kaufman v. Garner,* 173 Fed. 550; *Skinner & Mounce Co. v. Waite,* 155 Fed. 828; *Roschynialski v. Hale,* 201 Fed. 1017; *Lardned v. Griffin,* 12 Fed. 590; *In re Healey,* 53 Vt. 694, 38 Am. Rep. 713; *Person v. Grier,* 66 N. Y. 124, 23 Am. Rep. 35; *Halsey v. State,* 4 N. J. L. 369; *Brown v. Getchell,* 11 Mass. 11; *Andrews v. Lembeck,* 46 Ohio St. 38, 18 N. E. 483, 15 Am. St. 547; *Roberts v. Thompson,* 134 N. Y. Supp. 363, 149 App. Div. 437; *Brooks v. State ex rel. Richards,* 3 Boyce (Del.) 1, 79 Atl. 790; *Smith v. Alabama,* 124 U. S. 465; *Richardson v. Smith,* 74 N. J. L. 111, 65 Atl. 162; *Matthews v. Tufts,* 87 N. Y. 568; *Mitchell v. Huron County Circuit Judge, supra; Wilson v. Donaldson,* 117 Ind. 356, 20 N. E. 250, 10 Am. St. 48, 3 L. R. A. 266; *First Nat. Bank v. Ames,* 39 Minn. 179, 39 N. W. 308; *Linton v. Cooper,* 54 Neb. 438, 74 N. W. 842, 69 Am. St. 727; *Bolz v. Crone,* 64 Kan. 570, 67 Pac. 1108; *Murray v. Wilcox,* 122 Iowa 188, 97 N. W. 1087, 101 Am. St. 263, 64 L. R. A. 534; *Martin v. Bacon,* 76 Ark. 158, 88 S. W. 863, 113 Am. St. 81; *Long v. Hawken,* 114 Md. 234, 79 Atl. 190, 42 L. R. A. (N. S.) 1101; *Dungan v. Miller,* 37 N. J. L. 182; *Massey v. Colville,* 45 N. J. L. 119, 46 Am. Rep. 754; *Miles v. McCullough,* 1 Binn. (Pa.) 77; *Palmer v. Rowan,* 21 Neb. 452, 32 N. W. 210, 59 Am. Rep. 844; *Hayes v. Shields,* 2 Yeates (Pa.) 221; *Cooper v. Wyman,* 122 N. C. 784, 29 S. E. 947, 65 Am. St. 731; *Cameron v. Roberts,* 87 Wis. 291, 58 N. W. 376, 41 Am. St. 43; *Starret's Case,* 1 Dallas (Pa.) 355; *Persse v. Persse,* 5 H. L. Cas. 671; *Parker v. Marco,* 136 N. Y. 585, 32 N. E. 989, 32 Am. St. 770, 20 L. R. A. 45; *United*

*States v. Edme,* 9 Serg. & R. (Pa.) 147; *Norris v. Beach,* 2 Johns. (N. Y.) *294; *Sanford v. Chase,* 3 Cow. (N. Y.) 381; *Henegar v. Spangler,* 29 Ga. 217; *Ballinger v. Elliott,* 72 N. C. 594; *Arding v. Flower,* 8 Term. Rep. (K. B.) 534; *Newton v. Askew,* 6 Hare (Ch.) 319; *Tribune Ass'n v. Sleaman,* 12 N. Y. Civ. Proc. 20; *Fisk v. Westover,* 4 S. D. 233, 55 N. W. 961, 46 Am. St. 780; *Minnich v. Packard,* 42 Ind. App. 371, 85 N. E. 787; *Tory v. Bast,* 3 W. V. C. 63.

The minority rule is supported by the following authorities: *Baldwin v. Emerson,* 16 R. I. 304, 15 Atl. 83, 27 Am. St. 741; *Ellis v. Degarmo,* 17 R. I. 715, 24 Atl. 579, 19 L. R. A. 560; *Bishop v. Vose,* 27 Conn. 1; *Baisley v. Baisley,* 113 Mo. 544, 21 S. W. 29, 35 Am. St. 726; *Guynn v. McDaneld,* 4 Ida. 605, 43 Pac. 74, 95 Am. St. 158; *Greer v. Young,* 120 Ill. 184, 11 N. E. 167; *Lewis v. Miller,* 115 Ky. 623, 74 S. W. 691.

The rule we follow in this case in no wise conflicts with the general rule that a nonresident temporarily within a state but not in attendance upon court may be served with civil process and be subjected to the jurisdiction of the courts of that state.

The writ will issue.

FULLERTON, MAIN, MOUNT, and BRIDGES, JJ., concur.

MITCHELL, J. (dissenting)—I dissent. If the rule relied on in the majority opinion were the law in this state — of which I am satisfied to the contrary — it would afford no justification for the conclusion directing the writ to issue. The reasons given by the courts in establishing what is spoken of as the majority rule have no application whatever to the present case. Those reasons are that it is important to the administration of justice that each party to a suit should have an unhampered opportunity to present his case, and

that a nonresident witness or party should not be deterred by the fear of being harassed or burdened with *new* suits in a foreign state. The cases supporting that rule are uniformly the same and are clearly illustrated by the cases of *Mitchell v. Huron County Circuit Judge,* 53 Mich. 541, 19 N. W. 176, and *Wilson Sewing. Machine Co. v. Wilson,* 22 Fed. 803, cited and quoted from in the majority opinion. In the Michigan case, the relator had gone to another jurisdiction to testify in two cases. Judge Cooley said:

"He was examined as a witness in one of the causes and the other was continued. He makes oath that he was a necessary witness in the two cases, and attended the court for the sole purpose of giving his evidence. While so in attendance he was served with a summons in another case."

In the case of *Wilson Sewing Machine Co. v. Wilson,* *supra,* the defendant, a resident of Chicago, had gone to Connecticut to serve as a witness and to instruct his counsel in a case wherein he was defendant and one Alford was plaintiff. During the time of the trial of that case, he was served in the courthouse with a summons and complaint in an action brought by the Wilson Sewing Machine Company. The district judge sustained a plea in abatement, upon the ground that the service was illegal, for the reason given in the quotation from that case in the majority opinion herein. But the case at bar presents a different situation. The petition here alleges that, when the case was called for trial in the superior court of King county, the plaintiff took a voluntary nonsuit, and before the relator had left the courthouse building caused a summons to be served upon her, and two days later filed with the clerk of the superior court a complaint upon the same cause of action as the one just dismissed. That is, she was within and subject to the jurisdiction

of the court for the trial of the cause in which she appeared as defendant. Her privilege and the administration of justice were the same—neither more nor less—as if she had been a resident suitor. As to that cause of action, the plaintiff therein was entitled to take a voluntary nonsuit against her and commence the action anew, just as though she had been a resident of the state, without crossing the majority rule relied on. Within the reason of that rule, the effect of what was done amounted to nothing more than a continuance of the trial of the cause in which this relator, as a suitor, had already appeared. That rule proscribes the starting of a new suit for a different cause of action, while here the parties, the cause of action and the court are the same as in the case voluntarily nonsuited by the plaintiff. The reason for the rule fails in this case hence the rule itself has no application, and the demurrer to the petition filed in this court should be sustained.

But, passing the demurrer and considering what is suggested by the relator and declared by the majority opinion to be the sole question in the case, I am convinced, as already stated, the majority opinion is wrong. On this branch of the case I am willing to assume, for argument's sake, that the action which the relator seeks to abate is not only a new suit, strictly speaking, but is a suit upon a cause of action different from the first one. It is more important to find out and declare what the law in this state is than to ascertain what it is in other states, or what other courts have declared the law to be in other jurisdictions. Rather than say we have no statute bearing upon the question of whether a nonresident litigant, who comes to this state solely to defend a suit in which he is named as a defendant, can be served with process in a new suit, it would be more accurate to say we have no statute

granting any privilege or immunity to such person; for the concluding paragraph of the majority opinion states that all other nonresidents temporarily within the state may be served with civil process and subjected to the jurisdiction of the courts.

Section 207, Rem. Code, found in the chapter on the subject of the commencement and trial of civil actions, provides:

"In all other cases the action must be tried in the county in which the defendants, or some of them, reside at the time of the commencement of the action, or may be *served with* process, . . ."

If it be claimed this section relates only to the place of trial and shall not be construed as authority by which to determine who may or may not be served with process, then certainly the statute making the common law the rule of decision in this state, by undeniable directions, authorizes the service of civil process upon nonresidents temporarily within this state so as to subject them to the jurisdiction of the courts, whether they be suitors or not.

At common law the commencement of the suit was the original or royal writ, sued out from the court of chancery and directed to the sheriff, requiring him to command the party complained of to satisfy the complainant, else to appear and answer in the court of common pleas. The writ was followed by process which, more anciently, consisted first of verbal warning to the defendant to appear in court on the return day of the original writ. If defendant failed to appear, an attachment of his goods followed, if he had any. At a later period, in nearly all cases a capias was issued out of the court of common pleas and served upon the defendant at the same time as verbal summons upon the original writ. At a still later period of time, the summons was omitted, and the writ of capias

became the first process. In book 3, Blackstone's Commentaries (Lewis' ed.), at page 287, it is said:

"For, not having obeyed the original summons, he had shown a contempt of the court, and was no longer to be trusted at large. But when the summons fell into disuse, and the *capias* became in fact the first process, it was thought hard to imprison a man for a contempt which was only supposed: and therefore in common cases by the gradual indulgence of the courts, (at length authorized by statute 12 Geo. I. c. 29, which was amended by statute 5 Geo. II. c. 27, made perpetual by statute 21 Geo. II. c. 3, and extended to all inferior courts by 19 Geo. III. c. 70) the sheriff or proper officer can now only personally serve the defendant with the copy of the writ or process, and with notice in writing to appear by his attorney in court to defend this action; which in effect reduces it to a mere summons."

During all the time the writ of capias was in use to the extent of restraint of the person, certain persons, including suitors and witnesses, enjoyed the privilege of exemption from arrest. Blackstone's Commentaries, book 3, page 289. Freedom from restraint was accomplished by special bail, or application by the defendant to the court for discharge and the filing of common bail; if special bail had already been furnished, the bail bond was ordered canceled. In all such cases, however, process was served, the court obtained jurisdiction of the person and the suit went on.

The Federal courts have adopted the majority rule. The latest of such cases is *Stewart v. Ramsay,* 242 U. S. 128. It was a case in which Ramsey was sued by Stewart while the former was in a state other than that of his residence as a witness in the case wherein he was plaintiff and one Anderson defendant. His plea in abatement as being exempt from process was sustained. In the opinion it is said, at page 130:

"In *Blight v. Fisher* (1809), Pet. C. C. 41, Fed. Cas. No. 1542, Mr. Justice Washington, sitting at circuit, held that the privilege of a suitor or witness extended only to an exemption from arrest, and that the service of a summons was not a violation of the privilege or a contempt of court unless done in the actual or constructive presence of the court. But in *Parker v. Hotchkiss* (1849), 1 Wall. Jr. 269, Fed. Cas. No. 10,739, District Judge Kane, with the concurrence, as he states, of Chief Justice Taney and Mr. Justice Grier, overruled *Blight v. Fisher,* and sustained the privilege in favor of a non-resident admitted to make defense in a pending suit and served with summons while attending court for that purpose, . . ."

Then, proceeding, the court quotes from and adopts the reason given in *Parker v. Hotchkiss,* 1 Wall. Jr. 269 (Fed. Cas. No. 10,739), showing that the claim of personal immunity to the suitor was granted because of the privilege of the court, rather than of the defendant; being founded, as asserted, upon the necessities of judicial administration. There is no claim that the decision rests upon either statute or common law. On the other hand, the case of *Blight v. Fisher,* Pet. C. C. 41 (Fed. Cas. No. 1,542), was one in which the law as such was ascertained and declared. In it Mr. Justice Washington said:

"Mr. Stockton has taken the true distinction. The service of process, whether a capias or summons, in the actual or constructive presence of the court, is a contempt, for which the officer may be punished. But the privilege of a suitor or witness extends only to an exemption from arrest. The privilege claimed being in derogation of the right of the other party to sue, the defendant's counsel were fairly called upon to produce some case to support his claim to the privilege."

Then follows a review of cases relied on by the defendant, showing they are without merit, and the opinion concludes with the statement:

"On the other hand, the writers, who speak upon this subject, confine the privilege of suitor and witnesses to exemption from arrest, and not a dictum to the contrary is to be found."

A greater number of the state courts have adopted the majority rule. I have not taken occasion to examine either the constitutions or statutes of such states to ascertain if they authorized imprisonment for debt at the dates of the decisions, or provided for the issuance of a capias as or in connection with the summons in the commencement of actions. Certainly, in this state, the writ of capias and imprisonment for debt have been abolished.

In addition to *Stewart v. Ramsay, supra,* counsel for relator cites only 32 Cyc., page 492, § 6, and the case of *Long v. Hawken,* 114 Md. 234, 79 Atl. 190, 42 L. R. A. (N. S.) 1101, in support of his contention. The first contains a list of cases both for and against the majority rule. To the same effect see 21 R. C. L., page 1305 *et seq.* The Maryland case (the commencement of another action while the defendant was actually engaged in court as a party in the trial of a case) supports the majority rule, admits considerable conflict of authority in the cases upon the general question, and cites a number of favorable state and Federal cases. About the same time (1911), in a rather elaborate opinion in *Brooks v. State ex rel. Richards,* 3 Boyce (Del.) 1, 79 Atl. 790 (a case in which process was served in an independent suit), the Delaware court, though declining to apply the general rule in that case for reasons not necessary to mention here, reaffirmed the general rule and, among other things, said:

"The rule is based upon reason and was established for a purpose which has been consistently adhered to from the early English authorities down through the

modern American authorities upon the subject. The reason of the rule is the proper administration of justice and its purpose is to protect that administration from embarrassments and interruptions caused by disturbance to those whose attendance upon the courts is compelled by duty or necessity.''

Proceeding, there is given a list of English and American authorities. Considering the English authorities, which we think important, we examine two among those first cited:

(a) Bacon's Abridgment, ''Privilege,'' vol. 8, page 168, B 2. Examined, it reads:

''The law not only allows privileges to the officers of the court, but also protects all those whose attendance is necessary in courts; so that if a suitor is arrested either in the face of the court, or out of the court, as he is coming to attend and follow his suit, or upon his return, it appears upon complaint made thereof, that the fact was so, the court will not only discharge the party from the arrest, but will punish the officers or bailiffs, as also the plaintiff *(a)* who procured the arrest, as for a contempt to the court.''

(b) Tidd's Practice, vol. 1, page 195. Examined, it reads:

''The Parties to a suit, and their *Attorneys* and *Witnesses,* are for the sake of public justice, protected from arrest, in coming to, attending upon, and returning from the courts; or, as it is usually termed, *eundo, morando, et redeundo.*''

On the other hand, we call specific attention to only two of the authorities supporting the minority rule. In the case of *Baldwin v. Emerson,* 16 R. I. 304, 15 Atl. 83, 27 Am. St. 741, the court said:

''The question whether a party in attendance upon a court, in the prosecution or defense of a suit, is privileged from the service of a summons for the commencement of a suit against him, is one upon which there has been a contrariety of decision. The general

rule relating to protection from the service of process is, that all persons who have any relation to a cause which calls for their attendance in court are protected from arrest while going to and attending court and returning. This protection, however, is not wholly, nor chiefly, the privilege of the person, but is granted in the interest of the public, that the courts may not be embarrassed or impeded in the conduct of their business. Hence, it has generally been held, that the protection is limited to exemption from arrest and does not extend to the service of process which does not interfere with or prevent the attendance of the person upon the court.'' [Citing cases.]

Then follows a review of American authorities, holding *pro* or *con,* and the court concludes as follows:

''While we concede the force of the reasons advanced for protecting non-resident witnesses from the service of a summons against them for the commencement of a suit, *eundo, morando, et redeundo,* we are not convinced of the sufficiency of the reasons assigned for the exemption of non-resident suitors from such process. We think it would rarely happen that the attention of a non-resident plaintiff or defendant would be so distracted by the mere service of a summons from the immediate business in hand, in prosecuting or defending a pending suit, that the interests of justice would suffer in consequence, or that the liability to such service would often deter them from prosecuting or defending their just claims or rights. The reasons assigned for the exemption would apply equally as well to resident as to non-resident suitors, and it has never been deemed necessary to exempt resident suitors from the service of a summons, so far as we have been able to find, except in the single state of Pennsylvania. We think these reasons are fanciful rather than substantial. We are of the opinion, therefore, that a non-resident suitor attending court in the prosecution of a suit is not exempt from the service of a summons against him in another suit.''

In the case of *Greer v. Young,* 120 Ill. 184, 11 N. E. 167, the supreme court of Illinois said:

"The ruling of the court, therefore, must be rested entirely upon the privilege or immunity which the common law has, from a very early period, extended to parties and witnesses in a lawsuit while attending court, including going and coming. This rule is found in all the text books, and, in most of the cases we have examined, is expressly limited to cases of *arrest* on civil process. 1 Tidd (1st Amer. Ed.) 174; 1 Bl. Comm. 289, side p. 1; Greenl. Ev. §§ 316, 317; 2 Bouv. Dict. 284.

"The rule as laid down in the above works, is fully sustained by an almost unbroken current of authority, as is fully shown by the following cases: *Meckius v. Smith,* 1 H. Bl. 636; *Kinder v. Williams,* 4 Term R. 378; *Arding v. Flower,* 8 Term R. 534; *Spence v. Bert,* 3 East 89; *More v. Booth,* 3 Ves. 350; *Ex parte Hawkins,* 4 Ves. 691; *Ex parte King,* 7 Ves. 313; *Sidgier v. Birch,* 9 Ves. 69; *Ex parte Jackson,* 15 Ves. 117-120.

"The above authorities are also valuable as throwing light upon the procedure or practice in cases of this kind. The arrest of a party to a suit, by civil process, being regarded as a breach of the defendant's privilege, the usual course was to appear in the cause in which the arrest was made, and procure a rule against the plaintiff and his attorney to show cause why the defendant should not be discharged out of custody by reason of his alleged privilege, *upon his filing common bail.* The rule to show cause was always supported by affidavit setting up the fact of the arrest, and attendant circumstances. On the hearing, the rule, depending upon the proofs, was either made absolute or discharged. If the former, the defendant, upon filing common or nominal bail, was discharged, and, if he had given special bail, the bail bond was ordered to be surrendered and canceled. Nevertheless, the defendant was in court, and was bound to answer the action."

These two cases have been selected because they, like others of a similar sort, either directly or through authorities cited, discover the common law and the English statutes prior to the year 1776, upon the sub-

ject, and at the same time give convincing reason for declaring and applying the same in the absence of any controlling constitutional or statutory mandate to the contrary.

The privilege accorded the suitor was simply immunity from personal restraint caused by the service and enforcement of the capias. It had to do only with the manner or style of the process, and even in case the defendant was exempt from arrest, as said in *Greer v. Young, supra,* he was in court, and was bound to answer the action. The summons used in the commencement of an action in this state in no manner threatens the personal liberty of the defendant. While it requires him to appear within twenty days, it only means he must proceed to make up issues for the trial of the controversy, or judgment by default will be taken against him, and does not mean that he will ever be compelled necessarily to personally appear in court. He may testify by deposition, a plan formerly unknown to the common law courts. And·if it be said judicial administration is better served by having a party personally present in court to testify, it may also be said that, for the same reason, it would be better to have any other witness personally present, from which it would follow that we have just as much right and power to attempt to set aside the statute which provides no person shall be compelled to attend as a witness before any court in a civil action out of the county in which he resides, unless his residence be within twenty miles of such court, as we have to attempt to set aside another statute which, reaching through the common law, provides that a nonresident temporarily in this state, whether suitor or witness, or not, may be served with process and subjected to the jurisdiction of the courts. In the case of *Richards v. Redelsheimer,* 36 Wash. 325, 78 Pac. 934, it was said:

"The common law, as adopted by our legislature in 1863, in so far as the same was not incompatible with our conditions, including the statute law of England as it existed at the date of the Declaration of Independence, became the common law of the late territory of Washington, and, by virtue of the constitution, the law of this state, and still continues to be the law except in so far as it has been modified by legislative enactment. *Wagner v. Law*, 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 28 Am. St. 56, 15 L. R. A. 784."

Thus, whatever may be the rule in other jurisdictions, having seen that, by the common law, the privilege of a suitor, while engaged as such, from the service of process extends only to immunity from arrest, still leaving him to answer the action; having seen that the writ of capias is not in use here; having seen that a summons in no manner threatens the personal restraint of a defendant; having seen that the common law and statutes of England, prior to the time of the Declaration of Independence, constitute the rule of decision in this state; and finding we have no written law allowing the privilege claimed by the relator; then for the solution of the inquiry we must revert to and declare the rule of the common law, to the effect that where a person is actually present within this state, although a nonresident and only temporarily present, he may, upon proper service of process, be subjected to the jurisdiction of the courts of this state.

HOLCOMB, C. J., TOLMAN, and PARKER, JJ., concur with MITCHELL, J.